The opinion of the court was delivered by
Duncan, J.
This was an action brought by the corporation against the defendant to compel payment of the amount of the subscription of the defendant, one of the seven first named persons in their charter, and who accepted the charter, and acted under it by giving notice of the election to be held for president and managers of the company, and who voted by proxy at the said election.
The defence was, that the charter was obtained by means of the subscription of three hundred shares of fictitious stock to make up the number of subscribers required by the law, and that the charter, obtained by this deception on the government, who on the faith of it subscribed twenty thousand dollars, four hundred shares, was a nullity, and that the corporation could sustain no action.
This defence was sustained by the court, and the court likewise decided, that no conduct of the defendant could enable the corporation to support this action, against him for his subscription.
The serious public consequences, and the injury inflicted on the stockholders, who have paid their money for making the road, and on the government, who have paid the large sum of twenty thousand dollars, all which is lost and forfeited, if this decision be a correct exposition of the law, makes this a very important question; for if it be so as to this corporation, other turnpike companies are involved in the same ruin. But, however tremendous the consequences may be, it would be no reason for reversing this judgment, if the law be as it is laid down by the court. But it is a reason for examining the doctrine with great care and deliberation. When the case of The Hibernia Road vvas under consideration, I stood alone in my opinion; but the opinion of the majority became the law of the laud, and affords a rule of construction of all these turnpike laws. The legislature by subsequent laws remedied the evil, growing out. of the decision, without impugning the decision itself, which it was not within legislative power to do. That decision has been misunderstood and the judges who made it, sensible that it was necessary to avoid misconception, declared that they must not be understood as making any insinuation against the validity of the charter; and the opinion was confined to one matter, the liability of the defendant to pay for his stock. *145 because he had not paid five dollars on each share, at the time of subscription, which was supposed to be in direct .opposition to the act of assembly. The court declare they will not say, that the company came fraudulently into existence, though the law was disobeyed, or that the charter would be void, if it had. If this charter was deceptively obtained, obtained by false representations, it could not in a collateral action, .in an action brought by the company to compel the performance of contracts entered into with it, be declared void. But if this charter had been fraudulently obtained, on which I am not called upon to give any opinión, still, until that question had been directly decided, in a proceeding instituted in this court, which alone has jurisdiction, either by scire facias to repeal the charter or declare it forfeited, or by a writ of quo warranto at the suit of the state, in which the state must be a party, and a party to the judgment for the seizure of the franchise, there is no instance of calling in question the right of a corporation, for the purpose of declaring its charter void, but at the instance, and on behalf of the government, and never on the relation of any individual. Commonwealth v. Union Insurance Company, 5 Mass. R. 230. attorney General v. Utica Insurance Company, 2 Johns. Ch. R. 389. 5 Johns. Ch. R. 381. The state may waive the right to exact the forfeiture, or declare the charter void, because obtained by deception; and here the state, it cannot be presumed, ever would do an act so detrimental to herself, in a pecuniary view, so injurious to the interest of the commonwealth in a public view, and so ruinous to the individuals, who, on the faith of the charter, have paid their money. It is sufficient to say, that the state has not interfered, and that until it does, and the charter is vacated by a judicial decision of this court, either on a scire facias or a quo warranto, the charter is a subsisting one, and they have a right to sustain an action. The corporate claim to sue and be sued remains. I speak now of public institutions for public purposes, and not of mere literary or charitable corporations created for private purposes. But whether they could sustain this action against the defendant, is another question, and this would depend on the question, whether a fraud has been committed on the defendant, by which he has sustained, or possibly could sustain a loss, by means of this fictitious subscription. It is a question ad hominem, and not by way of impeaching the charter. It is, in a great degree, a question of fact; for, if this defendant has accepted the charter, acted upon it, was one of the seven in the charter, advertised the election for managers, and voted by proxy, I do not think he ought to be heard against the payment of his subscription. It does not lie in his mouth to object; nor do I think ignorance of the fact of the subscription being partly fictitious, should naw be heard from him, if it were possible to doubt of his knowledge, because he, by his own public acts, has put the charter into motion; he has *146 encouraged the state to pay for the four hundred shares, and the individual subscribers to pay their subscriptions; he has suffered the road to be made at great public and private expenditure, he stands in a different situation from others who have not so conducted themselves; he has put his name to the fraud, if fraud it be; he has been an actor in the scene of fraudulent deception, of which he now seeks to avail himself, to the injury of the innocent, and he who assisted in putting the charter into action, cannot be permitted to say, to those who have innocently advanced their money and completed the road, the charter under which they acted was obtained by fraud upon the subscribers, and on the state. He should have informed himself of the fraud and declined to act. His ignorance of that, which it was his duty to know, shall not protect him, particularly when, in its consequences, it is injurious to others. He voluntarily became a member of the corporation, accepted the charter, acted upon it, put the whole matter into motion, encouraged the work: in this, so far as respected the claims against him, he acted at his peril.
These principles are by no means opposed to the matter decided in The Hibernia Turnpike Company v. Henderson. The decision itself, has no relation to this case. It did not pretend to touch the charter. On the contrary the majority of the court who decided in favour of the defendant, emphatically declared, that the charter was not affected. The apprehensions as to the consequences of the doctrine of the judge who dissented, were removed fay this disavowal, and the inconvenient results were provided against by a subsequent law. If the doctrine above stated be correct, it is almost needless to decide the main points on the exclusion of the evidence offered by the plaintiffs, of the defendant’s notification, in his official character, as one of the first seven named in the charter, of the election of the officers of the corporation. His voting at the election by proxy, the amount of the stock actually paid by the stockholders, the payment of the state subscription, the amount of the debts due by the company to them, and the perfect completion of the whole work, certainly all this is evidence to show, that the fraud now would be in the defendant (in withholding payment) on the government, and on the individual stockholders, and not on him.
The court is not to scrutinize the secret motives of the defendant in this defence, but it was candidly admitted by his counsel in the argument, that it arose from some disappointment in the election of the managers and officers of the institution; as it was likewise candidly admitted, and proved by the plaintiffs themselves, that three hundred subscriptions were fictitious, which, however little worthy of commendation, appears not to have been clandestine, but notorious; not confined to this corporation, but practised generally..
*147 . This case, if it fell within the provisions of the healing act of the 10th of Jipril, 1826, required not its aid, because this defendant stood in that situation, that he could not avoid payment on account of stock having been subscribed fictitiously by persons deemed insolvent. The act, is, however, so far important, as to show, that the state, instead of desiring the repeal of the charter or a divestment of the corporate rights of the corporation, ratify it, notwithstanding the charter of the company may have been obtained, by reason of stock subscribed fictitiously, or by persons deemed insolvent; and if they had a right to call in the charter, by a judicial condemnation, they waive the forfeiture, as the exaction of it would be an immense public evil.
Judgment reversed, and a venire facias de novo awarded.