*Lane, C. J.,
dissenting. The justice of the opinion of the *441 ■court, in these cases, does not rest on the ground that a vacancy •is created in these offices, from the simple operation of the act of ■the general assembly leaving the defendants without the county ■of Huron, by a change of the county lines. Such a doctrine, which would subject the tenure of office of all judges in the state, ■whose functions are territorial, to the will of a majority in the legislature, would be too gross- an abandonment of the slender judicial independence which the constitution has endeavored to ■secure. It is, therefore, not necessary for mo to show that a case cited by the plaintiff’s counsel, 21 Wend. 563, has no application. That case has no bearing upon the question of constitutional protection ; it relates to a public office, created by statute, and liable to modification by the same authority, and it decides nothing, except that where the existence of a public municipal corporation is terminated by lawful'authority, and two new ones are substituted in place of the old, that an officer in the old corporation is not an ■officer in the new one.
Neither does the opinion of the court, in the case before us, depend upon any implied resignation. The statute of 1805, Swan’s Stat. 611, section 3, which provides that a judge who “removes his residence ” beyond the limits within which his duties are to be exercised, “shall be considered as having resigned and vacated his office,” expresses the condition which the constitution annexes to his office, and under which he accepts it, and it specifies the act which affords evidence of resignation. But it is an act done by him, not a mere omission; an act visible, notorious, and provable, by which third persons will not be misled, and whose effect can not be mistaken by himself.
And it is not a point of difference among the members of the court that a judge may lose his right to his office from a noncompliance with this constitutional condition of residence. It is not doubted that a judgment of ouster might justly be pronounced against a judge who fails to keep his residence within the county for which he is elected, after notice of a change of ^limits, and a reasonable time and opportunity to conform to his duties.
But the present opinion of a majority of this court involves the affirmative of the following propositions: That these defendants, after the change of the boundaries of Huron county, unreasonably neglected to take their residence within it; that, in consequence of their neglect, and without judicial proceedings, their offices be *442 came vacant, so that the election of the relators, on the 14th day of March, was valid. It is to these propositions I am unable to lead my mind to assent.
It appears to me a sufficient objection that no such case is made by the pleadings. The prosecuting attorney avers the defendant unlawfully exercised his office from the 19th day of March to the-filing the information. Had he stopped there, the defendant must-have shown his authority. The State v. Commercial Bank et al., 10 Ohio, 541. But he.proceeds to disclose the specific ground of forfeiture, viz: “ That by the extending the limits of the county of Erie, the defendants became the residents of Eric county,, and are non-residents of Huron county, by reason whereof the aforesaid office of associate judge became vacant.”
No notice of the law, no neglect to remove, no opportunity to comply, is shown; but the forfeiture is claimed in pleading to have become absolute by the bare extension of limits. It is to this cause of forfeiture that the defendants have plead; and it is to this case of forfeiture which the counsel, on both sides, have argued, and it seems gratuitous to decide- a case which neither counsel have contemplated, and which lies not within the record»
But, passing over this question of pleading, I can not see how these offices could have become vacant on March 14, 1840. The vacancy must have existed on that day, because the election of the relators could not be holden valid unless a vacancy existed then, for an election to fill an office not vacant is void. 1 Kent’s Com. 224; The State v. Constable, 7 Ohio, 1; 2 Bac. Abr. 20; 2 Term, 280; Ang. & Ames on Corp. 65, The only known exception is *the usage of our legislature to provide for the termination of an office, which must, of necessity, happen .before its next session, by limitation of time, and, for obvious reasons, has never been held to extend to a contingent vacancy.
Now a lawful public officer, whose doings affect third persons, who holds a commission under the broad seal, is not to loso his title by a bare private,' perhaps secret, act of omission. The tenure of such an office has never before been held determined, without the intervention of some proceeding of an analogous public nature,, as a judgment in quo warranto, or, in some cases, by a writ of supersedeas, or discharge. Dyer, 155, 198, 211; 9 Co. 98; Co. Lit. 233; Cro. Car. 60, 61; 1 Sid. 81, 134; 3 Co. 44; 1 Roll. Abr. 580; 3 Mod. 335; 3 Lev. 288; The State v. Bryce, 7 Ohio, 82. His sit *443 nation is similar to the holder of a franchise. In both casos, although the forfeiture is incurred, no right is lost, until declared by some judicial or other public proceeding; Rex v. Corporation of Carmarthen, 2 Burr. 869; Commonwealth v. Union Insurance Company, 5 Mass. 230; Terrett et al. v. Taylor, 9 Cranch 51; Trustees v. Hills, 6 Cow. 23; Slee v. Bloom, 5 Johns. Ch. 366; 16 Serg. & Rawle, 140; State Bank v. Indiana, 1 Blackf. 267; and in both cases the reason is the same-to give the officer a day in court, to answer for his neglect, and to afford evidence to him, and to all the world, where the right is. I regard this rule as affording the most abundant reason for holding the election of the relators, or the 14th of March, void, for want of a vacancy.
Yiewing the case, however, upon its broadest merits, what is the act by which the defendants incurred a forfeiture as early as the day on which their places were supplied by the relators. An office is one of the kinds of incorporeal property, an estate in the lawful owner, the possession and tenure of which are governed by rules as definite and as well settled as those which regulate the ownership of other kind of property. Its lawful owner is not to lose it except by lapse of time, or by his own express consent, or from some fault, negligence, or misconduct. Now what have these defendants done * which they ought not; or, what have they not done which they ought? Choate lives on a tri-weekly post route, 114 miles distant from Columbus; Somers at a distance of 130 miles, near a post-office, at which the mail is received once or twice each week. The law altering the county limits was passed on March 6, 1840; the election of the relators occurred on the 14th day of March. The interval of time between these events, excluding the day of passing the law, the day of election, and Ihe intervening Sunday, is six days. It was the duty of the defendants,, as soon as the passage of the law was made known to them, to have made their choice whether they would remove their residence, and to complete such change within a reasonable time; but no forfeiture would accrue except from such neglect to remove, and the legislature would have no pretense to regard the office vacant until such neglect was made known to them. It may not be easy to define what precise time the law would adjudge reasonable. The case most analogous, is the law requiring clerks of new counties to keep their offices at the seats of justice within six months after they are established. It should be at least such a *444 length of time as would permit the master of a household conveniently to make the change; and he must be a very strict constructionist who would exact the speed with which a man would fly from his enemy. The very statement of the case, therefore, involves knowledge of the passage of the law, the opportunity of •choice, convenient time to change one’s residence, and information communicated to the legislature, that such removal had been neglected. Is this interval of six days, such reasonable time, within which all these things may be presumed to have ocurred ? Why, •there was not sufficient time to send from Columbus to take a deposition. There was only time enough to send a letter to Choate and secure bis answer by mail. There was not time to communicate, by the ordinary course of mail, with Somers. There was barely time for a man to ride to them from Columbus, and return, on a good horse, with good weather and good roads. I can not persuade myself, therefore, that these cases call for so swift a judgment.