## Littleton Manufacturing Co. *vs.* Parker.

An act of incorporation provided that the members might divide the capital stock into as many shares as they might think proper. By a written agreement, the subscribers fixed the capital stock at fifty thousand dollars, divided into five hundred shares of one hundred dollars each, but only one hundred and thirty-eight shares were subscribed for.—*Held,* that no assessment for the general purposes of the corporation could legally be made, until all the shares were taken.

ASSUMPSIT. The declaration alleged that the plaintiffs were duly incorporated in the month of June, 1835, and that the defendant, on the 22d day of March, 1839, in consideration that the plaintiffs had admitted him to take one share in the capital stock of said corporation, promised the plain-

tiffs that he would take said share, and pay therefor one hundred dollars, ten per cent. thereof on the first of June then next, and the remainder at such times as should be prescribed by the corporation, with an averment of an assessment of ten per cent. on the 27th day of July, 1839, and of divers other assessments, amounting to the full sum of one hundred dollars, with an averment of notice to the defendants.

The plaintiffs introduced in evidence an act of incorporation, passed on the 27th day of June, 1835, constituting a body corporate by the name of the Littleton Manufacturing Company. It provided that the members might divide the capital stock into as many shares as they might think proper, might order assessments and fix the time for their payment, and might establish by-laws. It also enacted that the shares of the corporation should be liable and holden for the payment of all assessments duly made thereon, and upon the nonpayment thereof within the time fixed for their payment, the delinquent shares might be advertised and sold at public auction, or so many of them as might be necessary to pay the assessments, with incidental charges.

The plaintiffs farther introduced a contract in writing, as follows :

" Subscription for the capital stock of the Littleton Manufacturing Company.

The amount of the stock is fixed at fifty thousand dollars, divided into five hundred shares of one hundred dollars each. The factory is to be located on the Ammonoosuc river, on the site known as the Bonney privilege, now owned by Bellows and Stevens. The capital stock of the company may be applied to such branch or branches of manufacture, as the stockholders, agreeably to the act of incorporation, may direct. There shall be paid to the treasurer of the corporation by each stockholder, ten per cent. of the amount of the stock subscribed and taken by him, on the first day of June next, and the remainder at such time or times as shall hereafter be prescribed by the corporation. We, the subscribers, hereby

agree and bind ourselves to take and pay for the number of shares in the stock of said company, annexed to our names respectively, agreeably to the foregoing proposals. Littleton, March 22d, 1839."

This was subscribed by several persons, and among them was the defendant, as a subscriber for one share. The whole number of shares subscribed for was one hundred and thirty-eight.

To show an organization of the company, and the assessments made on the shares as stated in the declaration, the plaintiffs offered a copy of the records of the company, certified by the clerk, to which the defendant excepted.

The plaintiffs also offered the testimony of an agent of the company, that they went into operation, and built a factory; and that in the month of August or September, 1839, at the request of the treasurer, he called upon the defendant to pay his assessments, to which he answered that he was coming to the village in a short time, and would pay, or make some arrangements about it. To this evidence the defendant excepted. The witness testified that he procured the subscription of the defendant, and on cross examination, stated that he told him that they calculated the capital stock to be thirty thousand dollars.

A verdict was taken for the plaintiffs, by consent, subject to the opinion of the court upon the foregoing case, judgment to be rendered thereon, or for the defendant, as the court might order.

*Ainsworth*, for the defendant.

1. The declaration is defective. The consideration of the alleged promise was executed. It should have been alleged to be made at the request of the defendant, which must either be proved or implied, and it can be implied only where the defendant has received a benefit. 1 *Chitty Pl.* 323; *Chitty on Con.* 15; 16 *Johns.* 283, *note a.*; 1 *Caines* 583;

1 *Saund.* 264, *note* 1 ; 7 *Johns.* 87. This defect is not
cured by verdict. 1 *Ch. Pl.* 326 ; 7 *Johns.* 87. Unless
the request is alleged and proved, the promise is *nudum pac-
tum.*

2. A permission to take stock does not amount to a con-
sideration ; it is no benefit nor loss. In this case there is no
mutuality.

A membership of the corporation is not made merely by
signing a promise to take stock. There is no certificate of
membership without which the defendant could derive no
benefit from the corporation. 8 *Mass.* 392.

The payment of the ten per cent. is not a payment of an
assessment. It is only an agreement among themselves which
does not make them members of the corporation. 1 *Caines*
586.

After the payment of the ten per cent., they can organize.
One who has not paid it gains nothing. In the case cited
from 1 *Caines,* the action was thought to recover the ten
per cent.

3. With the power to recover, there is given a remedy,
and no other remedy exists, unless the party has bound him-
self to pay by another agreement. 6 *Mass.* 40 ; 7 *Mass.*
102 ; 8 *Mass.* 138 ; 2 *N. H. Rep.* 380.

4. The assessments are not legally binding on the defend-
ant. He subscribed with the understanding that $50,000
should be subscribed, but only one hundred and thirty-eight
shares were taken. Suppose that only one share had been
taken, and the corporation had incurred expense, it cannot
be that the defendant would then be compelled to pay his
subscription, for his money would be thrown away. 6 *Pick.*
23 ; 9 *Pick.* 187 ; 10 *Pick.* 142 ; 1 *Moody & M.* 151. If
the sum of $13,800 were the capital stock, then the defend-
ant would be liable to pay only $30.00 on his share, and he
had a right to consider that only as the sum he was bound
to pay. 8 *Mass.* 268 ; 10 *Mass.* 384 ; 7 *Mass.* 102. The
defendant was deceived into making this contract, for the

agent told him that the capital stock was only $30,000, and the agreement he signed stated it to be $50,000.

We contend, also, that copies of records cannot be used, unless the records be of a public nature. 10 *Johns.* 154.

*Bellows*, for the plaintiffs. The material question is, whether the defendant is bound to pay what he subscribed for, the agent having told him that the capital stock was $30,000. The promise was unconditional to pay for one share, independent of any promise on the part of other persons. In the Massachusetts cases, the charters provided that the stock should be divided into shares, and the court held that until that should be done, the subscribers could not be held to pay. Corporations have been allowed to recover a sum sufficient to defray the expenses of the preliminary proceedings.

Here was an express promise to pay the assessments, after the factory had been erected. 5 *Pick.* 228; 14 *Mass.* 172. Payment of part of the assessments has been held tantamount to a waiver of any illegality in the mode of assessment. At any rate, the defendant is bound to pay the ten per cent., which is not an assessment, and there is a promise to pay it. This promise can be enforced by suit. Where a statute confers the means of executing a new power, given by the statute, an action will not lie, but if there be a promise to pay, it may be enforced by suit. 5 *Mass.* 80, 491; 6 *Mass.* 40; 9 *Johns.* 217; 14 *Johns.* 238; 10 *Pick.* 142; 1 *Caines* 381.

The records were competent evidence, being duly certified. 1 *Greenl. on Ev.* § 502; 7 *Peters* 51, 85; 14 *Pick.* 492; 9 *Cowen* 194; 10 *Johns.* 154; 14 *Mass.* 178. These cases were decided on the ground that the corporations were public. But even if they are private in their character, such books are evidence against the members of the corporation. *Greenl. on Ev.* 542; *Cowp.* 102; 5 *Wheat.* 420. Wherever the law authorizes a person to make copies, it makes

him competent to prove them. 14 *Pick.* 442. In this case the charter provides that a clerk shall be chosen, shall make copies, record doings, &c.

*Ainsworth*, in reply. The plaintiffs cannot recover enough to pay the expenses, &c., because the promise to pay was after the building was commenced, and the preliminary expenses had then all been incurred.

GILCHRIST, J. The charter of this corporation provides that the members may divide the capital stock into as many shares as they may think proper, and may order assessments and fix the time for their payment. It also enacts that the shares of the·corporation shall be liable and holden for the payment of all assessments duly made thereon.

The agreement, dated on the 22d day of March, 1839, and signed by the defendant, and purporting to be a "subscription for the capital stock" of the company, states that "the amount of the stock is fixed at fifty thousand dollars, divided into five hundred shares of one hundred dollars each," and the subscribers agree "to take and pay for the number of shares in the stock of said company," annexed to their names respectively. The defendant subscribed for one share, and the whole number of shares subscribed for was one hundred and thirty-eight.

The general question presented by the case is, whether any assessment for the general objects and purposes of the corporation could be made, until the five hundred shares mentioned in the agreement were subscribed for. If this could be done, and the defendant could be compelled to pay assessments on his share, the result would be, that instead of paying $\frac{1}{500}$th part of the whole capital stock, he would pay $\frac{1}{138}$th part of it, and if $13,800 should be insufficient to enable the corporation to proceed in its undertaking, as probably would be the case, all the money he might pay would be lost. The agreement provides, in express terms, that the

capital stock shall be fifty thousand dollars, and that it shall be divided into five hundred shares, and the defendant has not become a party to any agreement providing that the capital stock shall be thirteen thousand eight hundred dollars, and that the number of shares shall be one hundred and thirty-eight.

In the case of the *Salem Mill-Dam Corporation* vs. *Ropes*, 6 *Pick.* 23, a charter provided that the capital stock should be divided into five thousand shares, not exceeding one hundred dollars each. Only twenty-six hundred and eighty-seven shares were subscribed for, and it was held that no legal assessment could be made for the general objects of the act of incorporation, until all the shares should have been subscribed for. In a subsequent case between the same parties, 9 *Pick.* 187, the same position was reaffirmed by the court, and also in the case of the *Central Turnpike Corporation* vs. *Valentine*, 10 *Pick.* 142. In the *Norwich and Lowestoft Company* vs. *Theobald*, 1 *M. & M.* 151, the statute, establishing the company, provided that "the whole of the said sum of £100,000 shall be subscribed before any of the powers and provisions given by this act shall be put in force." It was held that the completion of the subscription list was necessary to enable the company to make a call upon the shares.

It does not appear in this case, that the assessments were laid for the purpose of defraying the preliminary expenses of the corporation, in which case perhaps they might have been recovered by virtue of the promise contained in the written agreement. 6 *Pick.* 23. Nothing is said in the case about preliminary expenses. The case finds only that the company went into operation, and built a factory, and called on the defendant to pay his assessments. It is unnecessary to examine the question whether the agreement contains an express promise to pay the assessments that might be laid upon the shares. Where the charter provides no other mode of enforcing payment of the assessments than a sale of the

shares, it has been held, that an action to recover the amount of the assessments cannot be maintained, unless there have been an express promise to pay them. *Andover and Medford Corporation* vs. *Gould*, 6 *Mass.* 40 ; *Worcester Turnpike* vs. *Willard*, 5 *Mass.* 80 ; *Taunton Turnpike* vs. *Whiting*, 10 *Mass.* 326. But such a promise, whenever it is made, must of course be considered as a a promise to pay only legal assessments, or in the words of the charter in this case, " assessments duly made." Our opinion is, that the assessments were not duly made, because the stock was not all subscribed, and that the action cannot be maintained. We need not, therefore, examine the other questions raised and argued by the counsel. It may be remarked, however, that the counsel for the defendant contended that his client was deceived by the representation of the agent, that they calculated the capital stock to be thirty thousand dollars. The agent procured the subscription of the defendant, but it was to a paper which stated the capital stock to be fifty thousand dollars, and the presumption is, that the defendant knew the contents of the paper he had signed. But whether the amount of the capital stock were fifty thousand, or thirty thousand dollars, is immaterial in the view we take of the case, for only one hundred and thirty-eight shares were subscribed, and the result must be the same in either event.

*Judgment for the defendant.*