NEW HAMPSHIRE CENTRAL RAILROAD v. JOHNSON.

Where a person subscribed for certain shares in a corporation, and the clerk en-
tered his name upon the records, and the subscriber subsequently stated that
he had taken the shares, and the treasurer offered him a certificate for the
same—*held*, that the evidence was competent to show him a shareholder, so
far as to be liable for all legal assessments that might be made upon his
shares.

If a person subscribes for shares in a corporation, and in the terms of his sub-
scription makes a promise to pay assessments thereon, he is liable to an action
for all legal assessments, before resort is had to a sale of the shares under the
charter. But where he only agrees to take a specified number of shares, and
*makes no promise to pay assessments, the shares must be sold to pay the as-
sessments*, before an action can be maintained.

Where the number of shares into which the capital stock of a corporation is
divided is fixed by the charter, and that provides that the directors may make
equal assessments upon all the shares, no valid assessment can be made
against a subscriber for shares, until all the shares are taken, unless he in
some way waives the provisions of the charter.

A subscriber for shares in a corporation may, by his acts, be estopped from
denying the legality of assessments upon his shares, on the ground that all
the shares are not taken up.

ASSUMPSIT, to recover the amount of four assessments
made Nov. 1, 1848, Jan. 21, 1849, March 26, 1849, and
April 28, 1849. Plea, the general issue. The declaration
contained two counts upon each assessment, in form as
follows:

In a plea of the case, for that on the first day of August,
A. D. 1848, at said Manchester, in consideration that the
said corporation then and there permitted the said Johnson
to become a member of said corporation, and assigned and
transferred to him five shares of one hundred dollars each in
the capital stock thereof; the said Johnson promised said
corporation to pay into the treasury thereof such assess-
ments on the said shares, not exceeding in all the said sum
of one hundred dollars on each, as should be ordered by the
directors from time to time, and on the first day of Novem-
ber, A. D. 1848, at said Manchester, the directors of said
corporation ordered an assessment of five per cent. on all

the shares in the capital stock aforesaid, to be paid the first day of December, A. D. 1848, being on the shares of the said Johnson the sum of twenty-five dollars, of which the said Johnson then and there had notice. Yet, though the time limited for the payment thereof has long since elapsed, and though often requested, the said Johnson has not paid the said assessment, but refuses so to do.

Also, for that the said corporation, on the first day of August, A. D. 1848, at said Manchester, at the special instance and request of said Johnson, permitted him to become a subscriber for five shares in the capital stock of said corporation, and then and there assigned to him said shares, and the said Johnson then and there accepted the said shares, and thereby became liable, and then and there promised to pay to the said corporation such assessments on the said shares as the directors of the said corporation might from time to time order, not exceeding in all the sum of one hundred dollars on each share. And on the first day of November, A. D. 1848, the directors of said corporation ordered an assessment of five per cent. on all the shares in the capital stock aforesaid, to be paid the first day of December, A. D. 1848, being on the shares of said Johnson the sum of twenty-five dollars, of which the said Johnson had then and there due notice, and then and there became liable to pay the same according to the said order. And in consideration thereof, then and there promised the plaintiffs to pay the same according to said order. Yet, though the time limited for the payment thereof has long since elapsed, and though often requested, the said Johnson has not paid the said assessment, but refuses so to do.

The plaintiffs put in evidence a book in which is the following :·

" We, the undersigned, severally agree to take the number of shares affixed to our names, in the New Hampshire Central Railroad Company, and to pay the assessments

upon the shares as they shall be called for by the directors of said company; the shares to be one hundred dollars each —provided the road go through East Weare.

| Names. | Residence. | Shares. |
| --- | --- | --- |
| Edmund Johnson, | East Weare, | 5 |
| David Moore, | East Weare, | 5" |

(Other names follow upon the paper in the same manner.)

The whole of the heading upon the book was written by David Cross, who was one of the directors of the company. The words " provided the road go through East Weare," were added some time after the most of the signers had subscribed the agreement, and was done at the defendant's suggestion. Cross testified in respect to the original heading, that he was instructed at a meeting of the directors to procure books, and write this heading upon them. He also testified that he had no authority from the other directors to make the alteration. The defendant received this book from Cross, and first signed his own name for five shares, and afterwards procured twenty-two others to sign it, and affix same number of shares to their names. But he never returned the book to the company, and kept it in his possession until the trial. Some time in the fore part of the winter of 1849, the clerk of the corporation called upon the defendant and took a list of the names and of the shares upon the book. The defendant furnished him with the book for that purpose, but refused to allow him to carry the book away, saying he was not ready to give it up yet—mentioned that one or two of his neighbors wanted him to retain it longer—and that there were some conditions as to locating the road, and he should not be surprised if the road went further south than the Maxfield route. Sometime before this conversation, and before the assessments were made, one of the directors gave the clerk a list of names, including the defendant's for five shares, and the clerk entered his name upon the books of the corporation as a stockholder

for five shares, but said he did not know that the defendant had assented that this should be done. When assessments were made, the treasurer sent to the defendant notice in form like the following:

"NEW HAMPSHIRE CENTRAL RAILROAD.

"Treasurer's Office, January 31st, 1849. Sir—An assessment of ten per cent. has been ordered by the directors of said railroad, payable on the first day of March next. Payments may be made at the treasurer's office in Goffstown, at the Manchester Bank in Manchester, and to James Wallace in Henniker.

"FRANKLIN N. POOR, Treasurer.

"Notice is also given that the treasurer is authorized to receive any part or the whole of the balance of the stock, for which interest will be allowed by the corporation from the date of payment."

The by-laws of the company provided that the treasurer should collect all assessments. No certificate of stock was ever offered to the defendant, no stock was assigned to him, and no order was made by the directors that the assessments should be paid to the treasurer, except so far as the facts reported in this case may show such assignment and order.

There was no evidence that the shares in the corporation were $100 each, except what is reported.

Aaron Wingate testified that he took part in procuring subscriptions for stock, at the request of one of the directors. Before he obtained any names, he sent to the defendant for the book before mentioned. The defendant refused to give it up, but sent him a paper, of which the following is a copy:

"The amount I have on my book which may be relied on, $5,600.

"EDMUND JOHNSON.

"Weare, October 30."

And the witness sent this paper to the directors before the first assessment. When the defendant sent this paper, there were just fifty-six shares signed upon the book in his possession, including his own. Before the assessment, and in October, 1848, there was a meeting of the stockholders, at which it was voted to go on with the construction of the road. The defendant was present at this meeting, but it did not appear that he said or did any thing there. The treasurer testified that the defendant always refused to pay his assessments when applied to, except once, in the fall of 1849, at which time the defendant held an order for $300, to be paid in stock. The witness called to take up the order and give the defendant his certificate. The defendant refused to give up his order, unless the amount could be applied on the five shares, and proposed as a compromise, if the witness would so apply it, he would pay the balance (being $200) in money. The witness declined doing so, on the ground that the $300 was to be taken in stock in addition to the five shares. The defendant said he could prove that he never agreed to take more than five shares.

In June, 1849, the building agent of the company negotiated with the defendant for the right of way over his land, and proposed to allow $300 in new stock. The defendant was unwilling to accept it, unless it could be applied on the five shares; he however finally yielded the point, but said he ought not, " for he had already taken five shares, and this would make eight." The corporation did not sell the defendant's stock. When the defendant signed the book in question, a route for the road had been surveyed through the village of East Weare, upon the north side of the river, through the defendant's mill yard, and another route had been talked of, about four miles south, called the Maxfield route. The road was finally located in June, 1849, about eighty rods from the village, leaving a river between. There was evidence tending to show that the road as located passed

through "East Weare," and the defendant's counsel declined going to the jury upon this question. The defendant contended that he had never assented that his name should be entered upon the books of the corporation as a stockholder, and the plaintiffs' counsel declined going to the jury upon this question, but insisted that the defendant was bound by his subscription to the book aforesaid, and that the corporation after that had a legal right to hold him as a stockholder.

A verdict was taken, by consent, for the plaintiffs, for the amount of the assessments and interest, upon which judgment is to be entered, or the same is to be set aside, a new trial granted, or judgment is to be entered for the defendant, as the superior court shall direct.

The plaintiffs offered a former stockholder as a witness, but who had sold out his stock within three months. The charter fixes the shares at 20,000. In all 3082 shares have been taken, and of these 2200 have been paid in full. The present indebtedness of the company is $280,000, and after deducting available means will be $224,000. A large number of creditors have given notice according to the act of 1846 in relation to corporations. The defendant objected that the witness was interested, but the objection was overruled, and the defendant excepted. After the evidence was closed, the defendant moved for a nonsuit, because, 1. The capital stock was not all subscribed. 2. The defendant never was a stockholder. 3. The declaration asserts an absolute subscription, but the book imports a conditional one. 4. The indebtedness of the company is so large that the defendant may be obliged to pay more than $100 upon a share, if there is a recovery in this suit. 5. There is no evidence that the shares were $100 each. 6. No stock was assigned to him. 7. His stock has not been sold. 8. The directors did not order the assessments to be paid to the treasurer.

The motion was denied, and thereupon a verdict was taken by consent, as above stated.

Ordered that the questions arising upon the foregoing case be reserved and assigned to the determination of the superior court. Either party may refer to the act of incorporation.

*Morrison, Fitch & Stanley,* for the defendant.

The defendant contends that he is not liable, on the ground that one half of the capital stock was not subscribed at the time of the commencement of this suit, and that the directors had no right, under the charter, to lay assessments until one half of said capital stock was subscribed. Pamph. Laws, June 1848; p. 626; *Littleton Manuf. Co.* v. *Parker,* 14 N. H. Rep. 548.

There was no sufficient evidence that the defendant was ever a stockholder. He had only subscribed a book, which he still retained in his possession, and never assented that his name should be put upon the books of the corporation.

There is a material variance between the contract declared on and that produced in evidence, inasmuch as the former is unconditional, while the latter is conditional, and should have been so set forth in the declaration. 1 Saund. on Pl. & Ev. 119, 120, 148; 1 Chit. on Pl. 331, 337; *Stanwood* v. *Scovill,* 4 Pick. 422; 10 Johns. 140; 2 Greenl. on Ev. 88; 8 Johns. 253.

The charter provides that no more than one hundred dollars shall be laid on each share. It appears by the case that the corporation is greatly indebted. We contend that if the defendant is liable in this suit, there may be a greater amount of assessments, under the 147th chapter of the Compiled Statutes, than one hundred dollars, and that, consequently, the plaintiff cannot recover in this suit.

There is no evidence that the shares were limited at one hundred dollars each, as set forth in the declaration. This is a material part of the agreement, and should have been

N. H. Central Railroad *v*. Johnson.

proved as laid.  The charter prescribes the amount of the
capital stock to consist of twenty thousand shares, but does
not limit the amount of each share, and there does not ap-
pear to be any authority from the directors to limit the
shares, or that they did so limit them.

No stock was assigned to the defendant, as stated in the
declaration.  This was the whole consideration of the prom-
ise on the part of the defendant and is material, and should
have been proved as laid.  *Crawford* v. *Morrill*, 8 Johns.
253; 10 Johns. 140; 2 Greenl. Ev. 90; 1 Chit. Pl. 332;
Saund. Pl. & Ev. 114, 146.

The charter provides that the treasurer shall give notice
of the assessments, and provided they remain unpaid for
sixty days, shall advertise and sell them to the highest bid-
der, and claim the balance (if they do not sell for enough to
pay the assessments) of the subscriber.  We contend that
this course was binding on the corporation, and that this
should have been done before this action was brought.  Sec-
tion 5 of charter, Pamph. Laws, June, 1848 ; *Littleton Manuf.
Co.* v. *Parker*, 14 N. H. Rep. 548.

There is no evidence to whom the assessments were order-
ed to be paid, as stated in the declaration.  This was
properly stated, and should have been proved.  2 Greenl.
Ev. 88.

*Baker & Peabody*, with whom was *D. Clark*, for the
plaintiffs.

1.  The defendant is estopped from setting up the fact
that all the stock was not subscribed for, as a defence to
this action.  He has waived that right by his own acts.
The defendant attended the meeting of the stockholders in
October, 1848, as the case finds, at which meeting it " was
voted to go on with the construction of the road."  This
was before any assessments were laid, and when the defen-
dant must have known that the stock was not all subscribed
for.  Further, the defendant knew the corporation was go-

ing on and expending money, because they paid him $300, in stock, for the right of way over his land. These facts prove the defendant to have been cognizant of and assenting to the acts of the corporation in expending money towards the construction of the road before the stock was all taken up. The creditors of the corporation could not know that the stock was not all taken up. They had the right to presume it was so taken, from the conduct of the defendant and other subscribers, in assenting to the contracting of debts by the corporation. The credit was given on the supposition that the corporation had proceeded legally, and had not contracted debts on the strength of assessments which were void, because the whole stock was not taken up. The defendant cannot now take advantage of his own wrong, and deprive innocent creditors of the corporation of his portion of the fund relied on for their payment. *Bridge* v. *Chapin*, 6 Cush. 53 ; *Alleghany City* v. *Mc Clurkan*, 14 Penn. Rep. (2 Harris) 81 ; *Spear* v. *Crawford*, 14 Wend. 20 ; *Clark* v. *Navigation Co.*, 10 Watts 364.

2. Was the defendant a stockholder? The act of signing the subscription list authorized the corporation to regard him a stockholder, and assign shares to him. The case finds that he signed the subscription book for five shares; that he attended the stockholders' meeting, at which it " was voted to go on with the construction of the road;" that on one occasion he admitted to the agent that " he had already taken five shares," &c., and that, in accordance with the agreement of the subscription book, the clerk " entered his name upon the books of the corporation as a stockholder for five shares." This is competent and, as we think, conclusive proof that he was a stockholder. Whether a certificate of stock had been given him or not is immaterial ; and it has been so settled. *Chester Glass Co.* v. *Dewey*, 16 Mass. Rep. 100.

The fact that the defendant retained the subscription book is of no consequence. He gave the reason for it,

" that one or two of his neighbors wanted him to retain it longer," &c. The inference that the defendant did not consider the contract complete, because he retained the book, is negatived by the note he sent to Wingate, to wit: " The amount I have on my book which may be relied on, $5,600." " When the defendant sent this paper, there were just fifty-six shares signed upon the book in his possession, including his own." The defendant *was* then a stockholder.

3. Is there a variance between the declaration and the evidence, in relation to the contract of subscription?

The contract declared on was the same as the one proved to have been signed by the defendant. The condition " provided the road go through East Weare," was not authorized by the directors, and was not added till " after the most of the signers had subscribed the agreement." It was not there when the defendant signed, for he " first signed his own name for five shares, and afterwards procured twenty-two others to sign it," &c. This condition, then, was no part of the defendant's agreement. It was afterwards added by his suggestion; but such subsequent addition, without the consent of the corporation, could not in any way affect or form a part of the original contract, and need not be set out in the declaration. The defendant cannot say that the alteration vitiates the contract, for it was made by himself, or at his suggestion. 1 Saund. Pl. & Ev. 114.

4. We see no reason for the objection that if the defendant be liable in this suit, the shares may be assessed to an amount greater than $100 each.

The charter expressly provides that " no assessment shall be laid on any share of a greater amount than one hundred dollars in the whole on each share," and any assessment above that amount is, of course, illegal and void. The fact that the corporation is in debt has only this effect, that the defendant, in addition to his assessments, may, in accordance with the statute, be personally liable for the amount of

the debts. But he may be so liable without regard to these assessments.

5. The defendant objects that there is no evidence that the shares were fixed at $100 each. The declaration alleges that the corporation " assigned and transferred to him five shares of one hundred dollars each in the capital stock thereof." The contents of the subscription paper, taken in connection with the fact that the clerk entered the defendant's name on the corporation books for five shares, is sufficient to sustain this allegation, if it be necessary to prove it.

6. The objection that no stock was assigned to the defendant, has already been considered. It cannot stand, and has been so decided.

7. The defendant objects that the corporation did not sell his stock to pay the assessments.

There were two remedies against delinquent stockholders. 1. The one given in the charter, of selling the stock. 2. The cumulative remedy of an action on the defendant's personal engagement to " pay the assessments as they shall be called for by the directors of said company." The corporation chose the latter remedy, as they might well do. *Worcester Turnpike* v. *Willard*, 5 Mass. Rep. 80 ; *Turnpike* v. *Whiting*, 10 Mass. Rep. 326, and cases there cited ; Ang. & Ames on Corp. § 549 ; 14 Johns. 238.

The case in 14 N. H. Rep., cited by the defendant, does not sustain this position. The court did not examine or decide this point, but their intimations fully sustain our position.

8. The defendant objects that the directors did not order the assessments to be paid to the treasurer. We think this objection trifling.

The declaration alleges a promise to pay into the treasury of the corporation. The subscription paper shows a " promise to pay the assessments upon the shares as they shall be called for by the directors."

The notice to the defendant is dated " treasurer's office ;"

notifies a general assessment, payable at the treasurer's office, or at either of two other places, and is signed by the "treasurer," the by-laws of the company providing that the treasurer shall collect all assessments.

EASTMAN, J. According to the views which the court have taken of this case, it is not necessary to go fully into all of the exceptions which were raised upon the trial, and we shall allude to several of them but briefly.

It is objected that the declaration sets up an absolute subscription, while the book imports only a conditional one, the condition being "provided the road goes through East Weare."

The case finds that the defendant's name was upon the book before this provision was added, and that the addition was made at his suggestion. He first subscribed for the shares without the proviso, and that appears to have been added without the assent of the plaintiffs. Had the book been in the possession of the plaintiffs, and so continued, before the proviso was added, the addition could not probably have been made without their consent. It is clear that it could not, after they had agreed to take the defendant as a stockholder. But if it was affixed before the defendant surrendered the book, and while it was legally within his control, it might be said that he never fully agreed to take the shares except upon the condition stated.

Were this a matter material to the case, and did we consider the variance established, the declaration could be amended upon terms, so as to save the plaintiffs' rights. So far as the declaration is to be regarded, we think the action need not be defeated.

It is said that the defendant was not a shareholder, and on that account was not liable to be assessed. But he subscribed the book, agreeing to take the shares. He stated that the amount upon the book that could be relied upon was $5,600, and his name was of the number that went to

make up this sum.   His name was entered upon the records of the corporation, and he subsequently stated that he had taken five shares.   The treasurer also offered him his certificate for the shares.   This evidence was competent to show him a stockholder, so far as to make him liable for assessments upon this ground, and were there no other objections to the assessments, we think the defendant could not relieve himself from liability.   *Chester Glass Company* v. *Dewey*, 16 Mass. Rep. 94, 100.

It was also objected that the defendant's shares were not sold to pay the assessments prior to the bringing of this action, the charter providing that if any subscriber shall neglect to pay his assessments, the directors may order the treasurer to sell his shares at public auction, and that such delinquent subscriber shall be held accountable for the balance, provided the shares shall sell for less than the assessments, with interest and costs of sale.

Upon this question, the authorities are not agreed.   The doctrine in New York and some other States appears to be, to hold the provision in the charter to sell the shares as a remedy merely cumulative, and to sustain an action for assessments, without an express promise to pay, and before resort is had to a sale of the shares.   *Troy Turnpike and Railroad Co.* v. *McChesney*, 21 Wend. 296 ; *Herkimer M. and H. Co.* v. *Small*, 21 Wend. 273 ; 2 Hill 127 ; *Mann* v. *Currie*, 2 Barb. Sup. Ct. Rep. 294 ; *Northern Railroad* v. *Miller*, 10 Barb. Sup. Ct. Rep. 260 ; *Mann* v. *Cook*, 20 Conn. Rep. 178 ; *Freeman* v. *Winchester*, 10 Smedes & Marshall 577 ; *Stokes* v. *Lebanon and Sparta Turnpike Co.*, 6 Humph. 241 ; *Selma and Tenn. Railroad* v. *Tipton*, 5 Ala. Rep. 787 ; *Beane* v. *Cahawba and Marion Railroad Co.*, 3 Ala. Rep. 660 ; 2 Bibb 577.

In Massachusetts the doctrine is otherwise, and it has there been held that where there is no express promise to pay the assessments, the remedy, in the first instance, is by a sale of the shares.   *Worcester Turnpike* v. *Millard*, 5 Mass. Rep.

80; *Andover and Medford Corporation* v. *Gould,* 6 Mass. Rep. 40; *Chester Glass Co.* v. *Dewey,* 16 Mass. Rep. 94; *New Bedford and Bridgewater Turnpike* v. *Adams,* 8 Mass. Rep. 138.

And this is declared to be the rule in *Franklin Glass Co.* v. *Alexander,* 2 N. H. Rep. 380.

Upon an examination of the authorities and upon principle, we think the true rule to be this: that where a party makes an express promise to pay the assessments, he is answerable to the corporation upon such promise for all legal assessments, and may be compelled to its performance by action at law, before resorting to a sale of the shares. It is a personal undertaking beyond the terms of the charter. Where, on the other hand, he only agrees to take a specified number of shares, without promising expressly to pay assessments, then resort must first be had to a sale of the shares to pay the assessments before an action at law can be maintained. His agreement simply to take the shares is an agreement upon the faith of the charter, and by it alone is he to be governed, so far as his shares are to be affected. He takes them upon the conditions and law of the charter. They exist only by virtue of the charter, and are to be governed by the provisions therein contained.

Where the subscription for shares contains a promise to pay the assessments, and the conditions of the subscription have been performed, there is no doubt that an action of assumpsit can be maintained, in the first instance, for all legal assessments. *South Bay Meadow Dam Co.* v. *Gray,* 30 Maine Rep. 547; *Smith* v. *Natchez Steamboat Co.* 1 How. 479; *Salem Mill Dam Corporation* v. *Ropes,* 6 Pick. 23; *Central Turnpike Corporation* v. *Valentine,* 10 Pick. 147; *Townsend* v. *Goeney,* 19 Wend. 424; *Glover* v. *Tuck,* 24 Wend. 153; *Dutchess Cotton Manuf. Co.* v. *Davis,* 14 Johns. 238. And several of the authorities cited to the above points, sustain this also.

As the subscription in this case contains a promise to pay

assessments, the objection that the shares have not been sold under the provisions of the charter, cannot prevail.

There are two or three other exceptions which we pass over, as they are not essential to the decision of the case; and we come to the consideration of the objection that the capital stock was not all subscribed for, and the shares not all taken when these assessments were made. And this question we regard as decisive of the plaintiff's rights. Its consideration shows that the action cannot be maintained.

The defendant's position is this: that he cannot be held to pay the assessments upon these shares, because the number of shares fixed by the charter were not subscribed for when the assessments were made, the charter providing for twenty thousand, and there being only three thousand and eighty-two taken.

While there are conditions expressly incorporated into the contract of subscription for stock, or where conditions can be legally inferred from the terms of the contract to take shares, those conditions must be fulfilled before the liability to pay assessments attaches. Thus, if the subscription shall be that the the subscriber shall not be holden, or assessments shall not be made until a certain number of shares shall be subscribed for, this condition being precedent to the liability of the subscriber must be made to appear, before he can be compelled to pay assessments.

When the conditions are unambiguously expressed in the contract of subscription, the question of liability, so far as the subscription itself is to be regarded, is easily solved. But when the subscription is general in its terms, to take the number of shares affixed to the name of the subscriber, the question is not always so readily decided.

In the case of the *Littleton Manuf. Co.* v. *Parker*, 14 N. H. Rep. 543, the act of incorporation provided that the members might divide the capital stock into as many shares as they might think proper. By a written agreement, the subscriber fixed the capital stock at $50,000, divided into

five hundred shares of $100 each, but only one hundred and thirty-eight shares were subscribed for ; and it was held that no assessment for the general purposes of the corporation could legally be made until all the shares were taken.

In *Central Turnpike Corporation* v. *Valentine*, 10 Pick. 142, the act of incorporation provided that the stock of the corporation should be divided into four hundred shares of $75 each ; and that no person should be held to pay a greater sum than $75, on any share by him subscribed for ; and the subscription papers contained a promise of the subscribers to pay the sums which should be assessed on their shares—in an action brought by the corporation against a subscriber for stock to recover an assessment laid for the general purposes of the corporation, it was held, that the plaintiffs must prove that the whole number of shares were taken up before the assessment was laid.

This decision was founded upon that of *Salem Mill Dam Corporation* v. *Ropes*, 6 Pick. 23, where the broad principle was laid down that no legal assessment could be made for the general objects of the act of incorporation until all the shares should be subscribed for. In a subsequent case between the same parties the same principle was reaffirmed. *Salem Mill Dam Corporation* v. *Ropes*, 9 Pick. 187 ; and so also is the doctrine of the case of *Cabot and West Springfield Bridge* v. *Chapin & a.*, 6 Cush. 50.

Such, likewise, appears to be the English rule. *Pitchford & a.* v. *Davis*, 5 Meeson & Welsby 2 ; *Wontner* v. *Shairp*, 4 Man. Granger & Scott 404 ; *Norwich and Lowestoft Company* v. *Theobold*, 1 Moody & Malkin 151 ; *Fox* v. *Clifton*, 6 Bing. 776.

Upon the doctrine of the cases cited, this defendant would not be liable for assessments made for the general purposes of the corporation, such as these were. The charter fixed the number of shares at twenty thousand, and provided that the assessments should not exceed $100 on each share. Only three thousand and eighty-two of the shares had been

taken when the assessments sued for were made, and thus the case falls very clearly within the rule. This subscription paper, like that in the case of the *Central Turnpike Corporation* v. *Valentine*, contained a promise of the defendant to pay the assessments upon the shares, but that promise goes no further than to make the subscribers personally liable to pay such assessments as shall be legally made. The effect of this form of subscription is, as we have seen, to create a personal duty in the first instance upon those who subscribe, beyond the statute liability of a sale of the shares to meet the assessments. Upon such a subscription they are liable to an action at law before a sale of their shares. But this promise tó pay assessments cannot be construed to mean illegal assessments, but only such as shall be duly and legally made, according to the provisions of the charter. And no authority is given by this charter for the directors to make any assessments, except equal ones from time to time " on *all* the shares in said corporation." Pamphlet Laws, June, 1848, p. 628, § 5. These assessments, then, being made upon only three thousand and eighty-two shares out of the twenty thousand, were, of course, made upon only a fraction of the number as provided by the charter, and so were not legally made. They were not equal assessments on all the shares of the corporation.

The provision of the seventh section of the charter, that unless one half of the capital stock shall be subscribed for and the corporation organized before the first day of January, 1855, and the sum of $100,000 expended towards the construction of the road before January 1, 1856, the act shall be null and void, from which it has been suggested that an inference may perhaps be drawn that assessments might be made when one half the shares should be subscribed for, does not affect this defendant, because not one fourth of the shares were taken when these assessments were made. And we think that this provision of the seventh section cannot by implication override the general provision for assess-

ments, as stated in the fifth section; and that no legal assessment could be made upon a partial filling up of the shares, except by agreement to that effect. In *Cabot and West Springfield Bridge* v. *Chapin & a.*, 6 Cush. 53, it was said by the court that where the purpose of the subscribers to a stock is that of proceeding to the execution of the business of the company, upon a partial filling up of the capital, and it is deemed expedient to levy assessments before the entire stock is taken up, there should be inserted a provision to that effect in the articles of subscription. In the absence of such a provision, it is necessary, before an individual subscriber can be charged upon his subscription, that the whole capital stock, or number of shares which constitute it, should have been taken up, or the party must have waived his rights to insist upon that condition by his own acts.

Subscribers may, by their acts, be estopped from saying that a corporation has not been legally established or assessments duly made. The authorities upon this point are many, and founded in good reason. *Dutchess Cotton Man. Co.* v. *Davis*, 14 Johns. 232; *Little* v. *O'Brien*, 9 Mass. Rep. 423; *Haggerstown Turnpike* v. *Creeger*, 5 Har. & Johns. 122; *Union Turnpike Co.* v. *Jenkins*, 1 Caines 381; *Brouer* v. *Appleby*, 1 Sand. Sup. Ct. Rep. 168; *Chester Glass Co.* v. *Dewey*, 16 Mass. Rep. 94; *Clark* v. *Navigation Co.* 10 Watts 364; *Elizabeth City Academy* v. *Lindsley*, 6 Ired. 476; *Centre Turnpike Co.* v. *McConaby*, 16 Serg. & Rawle, 140; *Sheffield and Manchester Railway Co.* v. *Woodcock*, 7 Meeson & Welsby, 578; *Chittenham Railway Co.* v. *Daniel*, 2 Adol. & Ellis N. S. 281.

In the case from the 6th Cushing, before cited, it is said that if a subscriber knowing that the requisite subscriptions had not been made to fill up the capital, had attended meetings of the corporation, and had coöperated in the votes for expending money, and for making contracts, and in other acts which could only be properly done upon the assumption

that the subscribers intended to proceed with the stock partially taken up, such subscriber might be estopped from setting up this defence.

Ought this defendant by his acts to be estopped from saying that the shares required by the charter have not been subscribed for, and that those assessments were not legally made ?    Do his acts show a waiver of his legal rights under the charter ?    We think not.    The whole course of his conduct, unless we except, perhaps, his attendance at the meeting in October, 1848, tends to show a disinclination to have the assessments made or to pay them.    And at the meeting referred to, in October, it appears that he was rather a spectator than otherwise, of what was transpiring.    He took no part in what was done.    He at one time offered, by way of compromise, to give up an order for stock and to pay the balance in money, but this proposition was not acceded to, and being a mere offer, could have no binding effect.    He stated, also, that he had taken five shares, but this was no more than what the subscription paper showed that he had agreed to do, and had no reference to the assessments.    Taking all the evidence together, we think that it has no competency to show that the defendant ever waived any of his legal rights in regard to these assessments, or ever knowingly intended to admit any liabilities that did not exist against him by the legal operation of the charter; and that he is not estopped by what he has done from setting up this defence.

With these views of the law the verdict must be set aside, and according to the provisions of the case there must be,

*Judgment for the defendant.*