## OSSIPEE HOSIERY AND WOOLEN MANUFACTURING CO. *v.* CANNEY.

In an action by an insolvent corporation to collect an assessment for the purpose of paying their debts, the interests of the creditors will be so far regarded that no defence grounded on defects in the organization of the corporation can be maintained, unless it could have been successfully set up in answer to a creditor's bill against the stockholders to enforce their personal liability.

The plaintiffs' charter provided that the first meeting of the corporators might be called by publication at least fifteen days prior thereto.   Only fourteen days' notice of the meeting was given.   *Held,* that if neither the grantors of the charter *(i. e.,* the state) nor the grantees complained of the defect in the preliminary notice, the objection could not subsequently be raised by a stockholder in a suit by the corporation against him to recover an assessment made under the provision, chapter 136, section 4, General Statutes.

A *de facto* organization of a corporation, formed and operated in good faith, under color of the charter, is an organization under the charter, within the meaning of the statute of 1846, ch. 321, sec. 7.

In a suit brought against a stockholder to recover an assessment made under the provisions of chapter 136, section 4, General Statutes, he will be regarded as having waived the right to object that the whole number of shares fixed and limited by the corporation was not subscribed for, if he has paid for the stock for which he subscribed.

The order in which the parties shall exercise the right of challenge of jurors is within the discretion of the court at the trial term, and their ruling on this point is not matter for exception.

No particular language is necessary to constitute a demand for payment. It is enough if both parties understand that a demand is made.

A corporation brought a suit against a stockholder to recover an assessment made under chapter 136, section 4, General Statutes. The stockholder wrote to the treasurer of the corporation as follows: "I suppose you are somewhat anxious to hear from me, as it is past the time specified for the assessment to be paid. I have the money due me, and shall have it the first of next month, so thought I would not borrow or hire it for so short a time; therefore you will excuse me for being so backward in paying my proportion." *Held*, that said letter was competent evidence to go to the jury to show an admission by the defendant that payment of all the debts named in the assessment had been demanded of the corporation.

If the objection, that some of the debts for which such assessment is made are not binding upon the corporation, is not insisted on at the trial, it will be regarded as waived.

Payment only of the debts of a corporation, in the cases and to the extent specified in chapter 135, General Statutes, can be enforced against individual stockholders under chapter 136, section 1.

An assessment can be made under chapter 136, section 4, to pay those debts only of which the payment can be enforced by bill in chancery under section 1, and payment of no other can be demanded under section 2.

The provisions of chapter 135, section 4, General Statutes, which forbid a corporation to contract debts or incur liabilities exceeding one half of its capital stock actually paid in and unimpaired, and of its other property and assets, are directory; debts contracted and liabilities incurred in excess of that amount are binding upon the corporation.

Section 5 of the same chapter gives such creditors an additional remedy against the directors of such corporation.

The stockholders may assess themselves to pay such debts under chapter 136, section 4, if they are individually liable to pay the other debts of such corporation.

When a creditor of a corporation had no knowledge that the corporation had exceeded the limit beyond which it is forbidden, by chapter 135, section 4, to contract debts, and could not by inquiry have ascertained that fact, the doctrine of *ultra vires* will not be applied to him.

ASSUMPSIT, by the Ossipee Hosiery and Woolen Manufacturing Company against Havillah D. Canney, for an assessment made by the plaintiffs upon the defendant as a stockholder in the plaintiff corporation for the purpose of paying the corporate debts under Gen. Stats., ch. 136, sec. 4. In impannelling a jury, the plaintiffs peremptorily challenged one juror and the defendant one; the plaintiffs then passed the

list to the defendant without exercising the right of second challenge; the defendant challenged a second time; the court then allowed the plaintiffs to challenge the juror drawn to take the place of the one set aside by the defendant's second challenge, and the defendant excepted. Writ dated February 14, 1872. The defendant pleaded the general issue, and the following brief statement: The plaintiffs will take notice that at the trial of said suit, the defendant will offer evidence that the charter of said pretended plaintiffs was never duly accepted; that the amount of capital stock was never duly fixed and limited, and that the number and the amount of shares in the same were never limited and fixed; that said plaintiffs never organized under their charter within three years from its passage; that said plaintiffs did not at the time said suit was begun, nor at any time before, nor at the time of the assessment in said declaration mentioned, owe any just liabilities; and that no demand for the payment of any liabilities of the plaintiffs in said declaration mentioned has been made; and that there was no legal ground for making said assessment; that said plaintiffs had, at the time of said demand and said assessment, ample funds to pay all their liabilities and all costs thereon, and at said time ample unincumbered personal property to satisfy all claims and all costs thereon; and that the same was duly exposed so that it might have been attached by said creditors of said plaintiffs; and said defendant is not and never has been a stockholder in said plaintiff corporation and never subscribed for any shares therein; and there are not and never have been any shares in said corporation; and that the defendant never received any certificate of stock in said plaintiff corporation; and that no assessment has been made as by said writ is alleged.

The plaintiffs' charter, approved July 7, 1866, is as follows: Section 1 is in the usual form, incorporating Smith, Dorr, and others, their associates, successors, and assigns, by the plaintiffs' name, giving them the powers and privileges, and making them subject to all the liabilities, incident to corporations of a similar nature. Section 2 authorizes the corporation to carry on a manufacturing business, and to hold property. "The capital stock of said corporation shall not exceed the sum of $50,000, which shall be divided into shares of $100 each." "Section 3. Any three of the persons named in the first section of this act may call the first meeting of the corporation, by publishing a notice of the time and place of meeting in some newspaper printed in the county of Carroll, fifteen days at least prior thereto, at which meeting or any adjournment thereof a clerk shall be chosen, and by-laws for the regulation and government of said corporation, not inconsistent with the constitution and laws of this state, may be established. * *"

Three of the grantees called the first meeting, to be held August 9, 1866, and notice thereof was published July 25, 1866. The defendant objected that this was only fourteen days' notice, instead of fifteen as required by the charter; that the first meeting and the adjournment thereof, and the adjourned meeting, were not legal; that the accept-

ance of the charter, the organization of the corporation, the limitation of the amount of stock, the by-laws, and all other acts and proceedings of those meetings, were nullities; and that the charter became void by force of Gen. Stats., ch. 134, sec. 2. At the first meeting the charter was formally accepted; officers were chosen; a vote was passed fixing and limiting the capital stock at $8,000; a committee was appointed to draft by-laws; a vote was passed adjourning the meeting to September 6, 1866, at which time by-laws were adopted; and these were the only meetings at which the corporation was organized and the stock limited.

The court ruled *pro forma*, that if by the proper computation of time the notice was published only fourteen days prior to the first meeting, such a defect did not, as a matter of law, defeat this suit, nor make the charter void on the ground that it was not legally accepted and the corporation not legally organized; and the defendant excepted.

In the autumn of 1867 the defendant took one share of stock, paid $100 for the same, and became a stockholder; but there was no evidence that he ever attended any meeting of the corporation, and he did not attend any meeting at which anything was done having any bearing on this suit. Seventy-six shares only were taken; and no certificate was filed with the town-clerk, as required by Gen. Stats., ch. 135, sec. 8. In September, 1870, the plaintiffs were insolvent, and have so continued to the present time.

At a meeting of the stockholders, called by the directors, and held February 15, 1871, "Voted unanimously, that an assessment be and is hereby made upon each stockholder of this corporation, who was a stockholder on or before the 15th day of September, A. D. 1870, of $200 per share for each share owned by such stockholder, to be paid to the treasurer of said corporation forthwith, to pay the debts and demands due and owing from this corporation to the following named persons, whose names and debts and demands are as follows:

"L. R. Hersom & Co., $5,632.15. [Here follows a list of about eighty other creditors, and the amount of the debt due each of them.] Amount, $15,318.28. The said debts having been contracted prior to said 15th day of September, 1870, and payment of said debts having been legally demanded by said persons, and the same not having been paid and discharged, and unincumbered personal property of this corporation sufficient to satisfy the same, with costs of suit, not having been exposed so that it might be attached in suits of the said creditors against this corporation,—

"3. Voted unanimously, that the directors and treasurer be instructed to collect said assessments forthwith and pay said debts."

In the first count of the declaration, it was alleged that all of said debts had been legally demanded. In the second count (added by amendment during the trial), that allegation was omitted.

The following letter, from the defendant to the treasurer of the company, was introduced in evidence:

" DRACUT, MASS., March 20, 1871.

FRIEND CHICK:

DEAR SIR:—I suppose you are somewhat anxious to hear from me, as it is past the time specified for the assessment to be paid. I have the money due me, and shall have it the first of next month, so thought I would not borrow or hire it for so short a time ; therefore you will excuse me for being so backward in paying my proportion. I suppose you intend to start the mill again ; hope you will have good success this time, and trust you will if you get rid of the land-sharks. If you wish for any of my assistance in that respect, I will come up and do what I can.                     Respectfully yours, &c.,

H. D. CANNEY."

One Chick, the plaintiffs' treasurer and agent, testified that the corporation commenced manufacturing in October, 1867, in Ossipee ; suspended business during the following winter ; began again the following spring, and continued till Sept. 16, 1870, when creditors sued, attached, and shut up the mill. The corporation was then insolvent; was owing the debts named in the assessment, with the exception of possible trifling mistakes. Demands had been made on me—not all after the failure ; some before that. Chick, and one Smith, a director, testified specifically what creditors had made demands upon them ; and there was no direct evidence that any creditor had made demand upon any stockholder or officer of the corporation, except upon Chick and Smith. For some of the debts named in the assessment, neither Chick nor Smith testified that demands had been made upon either of them. A list of the creditors and the amount of their claims (from which the list in the assessment was copied) was produced at the stockholders' meeting at which the assessment was voted, and also at a directors' meeting January 13, 1871, at which it was voted to call said stockholders' meeting. Subject to the defendant's exception, Quarles, the clerk of the corporation, was allowed to testify that at said directors' meeting said list was talked about ; that it was there stated and not denied that all the debts on the list had been demanded ; that at said stockholders' meeting the list was talked over, and about those debts having been demanded ; that he there stated that he didn't want to put one in the list that hadn't been demanded ; that he thought all the information given at each of said meetings about demands having been made was given by Chick and Smith. The court ruled that this testimony of the clerk was competent evidence on the question of demands made by the creditors upon the plaintiffs, and the defendant excepted. As to what the defendant ever knew of the organization of the corporation, the number of shares taken, and the facts and proceedings upon which the assessment was founded, there was no other evidence than that stated in this case. The court ruled that the defendant's letter to Chick was evidence competent to be submitted to the jury to show an admission of the defendant that payment of all the debts named in the assessment had been demanded, and that for this reason a nonsuit could not be ordered for want of evidence of such payment

having been demanded; and the defendant excepted. Chick and Smith testified that said debts were all due, as near as they could ascertain from the books of the plaintiff and the bills sent in; and that some of the creditors demanded payment in general terms, without naming the precise sums due them, and without any definite settlement being made to determine the sums due.

The defendant moved for a nonsuit on the following grounds: (1) There is no evidence that demand was made for payment of all the claims named in the assessment. (2) The charter was not legally accepted, the corporation was not legally organized, the capital stock was not legally fixed or limited, and the charter became void three years after its date, because only fourteen days' notice was given of the first meeting. (3) The assessment was illegal because seventy-six shares only had been taken. (4) The plaintiffs could in no case assess the defendant beyond one hundred dollars, the amount of his share; and the defendant, having paid that amount before the assessment, could not be assessed any amount whatever. (5) The plaintiffs' sole remedy is by a sale of the defendant's share. (6) The plaintiffs can have no right of action against the defendant till after a sale of his share.

The court *pro forma* declined to order a nonsuit, and the defendant excepted. The defendant offered no evidence. It was agreed that there were no questions of fact, except the following: (1) Was a demand made before the assessment upon the corporation for payment of each of the debts named in the assessment? (2) Was a demand made before the assessment upon the corporation for the payment of any of the debts named in the assessment? (3) Did the stockholders, present at the meeting of February 15, 1871, vote the assessment in good faith, exercising reasonable care and prudence and a sound judgment, for the honest purpose of paying the debts of the corporation?

These three questions were submitted to the jury, who answered each in the affirmative, whereupon the court *pro forma* ordered a general verdict for the plaintiffs, subject to the opinion of the court on the questions of law raised in this case.

The court instructed the jury that a demand made upon the corporation by a creditor need not be in writing nor by express words; that anything said or done by a creditor or anybody authorized by a creditor, intended to give the corporation to understand that a demand for immediate payment was made, and so understood by the corporation, would be a demand; that a demand made upon the directors or the treasurer would be made upon the corporation; that a demand made upon one director or an acting treasurer, or other agent, would be a demand upon the corporation, if it was the duty of such director, acting treasurer, or other agent to communicate such demand to the directors, and if it was so communicated before the assessment, so that they understood, before the assessment, that payment was demanded; and the defendant excepted.

During the trial a person sat by the defendant's counsel, occasionally

consulting with them in such a manner that the jury might have inferred that he was the defendant. Near the beginning of the trial, the defendant's counsel, being asked whether they would admit a certain fact, replied that they did not admit anything. Afterwards, one of the plaintiffs' counsel, while introducing evidence tending to show that the defendant was a stockholder, remarked to the defendant's counsel that he did not know whether the fact of the defendant's being a stockholder was in dispute. The reply was, in substance, a refusal to admit that fact; but after the plaintiffs' evidence on that point had been introduced, that fact was not controverted. In the closing argument, the plaintiffs' counsel commented briefly upon the defendant's letter to Chick as showing a remarkable forgetfulness of the defendant on the point of his being a stockholder, and as giving a character to the whole defence. To this course of argument the defendant objected; but the court declined to interfere, being of opinion that, although this line of argument was of little weight in this particular case, it was not carried beyond the plaintiffs' legal right; and the defendant excepted.

The books and documentary evidence used at the trial may be referred to as part of the case.

*Hobbs* (with whom were *Allen* and *L. D. Sawyer*), for the defendant.

Had the testimony of Quarles been made part of the plaintiffs' records, it would not have been competent. What he testified to was not a proper matter of record, and " entries on the books of a corporation relating to other matters of fact than the proceedings of the corporation are not evidence in their favor in a controversy between them and any stranger, nor between them and a member of the corporation holding or claiming adversely to them "—*Haynes* v. *Brown*, 36 N. H. 568; and of course mere statements made at a meeting in the absence of the defendant are not competent evidence, even if they might have been properly recorded. In this same case, page 563, near the bottom, the court say that in a suit for an assessment it might be essential to show that the amount of stock was fixed and limited.

The doctrine in regard to the necessity of a strict compliance with the charter and statute requirements as to notice is simply stated in *Insurance Co.* v. *Cram*, 43 N. H. 641. " Anything less than a legal notice is no notice at all." That case turned on a defect in the notice—precisely the same defect as in the case at bar. That case, like this, was a suit against a member of the corporation; and in this case, as in that, the defendant must prevail and the plaintiffs be nonsuit.

So, too, it is said, " a forfeiture incurred by a corporation by non-performance of a condition in its charter may be waived by the legislature by subsequent acts, recognizing the continued existence of the corporation; yet this doctrine does not apply, if, by the terms of the charter, the estate or franchise absolutely determines on failure to perform the condition." Angell & Ames on Corp. 747, 748, 3d edition; *People* v. *Manhattan Co.*, 9 Wend. 351; *Commonwealth* v. *Union Ins.*

Co., 5 Mass. 232; *Rex* v. *Theodorick*, 8 East 544;—see 7 Conn. 219; 8 Conn. 191; 10 Conn. 200.

The point is not that the plaintiffs have forfeited their charter, but that it has never existed. "A corporation created by statute, which requires certain acts to be done before it can be considered *in esse*, must show such acts to have been done to establish its existence." Angell & Ames, ch. 2, sec. 8; *Fire Department* v. *Kip*, 10 Wend. 266. And in the case at bar, the statute required a legal organization within three years, in order for the plaintiffs to exist, to be fully delivered: until such organization there was but a possibility of existence. Had the plaintiffs ever been once duly and legally *in esse*, the defendant could not show as a defence that there was reason for a decree of forfeiture. The state can deal with the matter of forfeiture of grants. Still, a forfeiture can only be decreed on equitable grounds. See ch. 225, Gen. Stats. That chapter treats of the forfeitures contemplated in all the cases where it has been held that a forfeiture can be enforced by proceedings in behalf of the state alone, and cannot be raised collaterally. It does not include those cases under sec. 2, ch. 134, Gen. Stats., where the charter does not become forfeited merely, but void— "of no effect." The words of the revised and compiled statutes are, "shall become null and taken to be wholly void;" and the court will see, by tracing the legislation, that no change has been intended in the law: in fact, a law that "shall be of no effect" is void. In this light the law is laid down in *State* v. *New Hampshire Turnpike*, 15 N. H. 166, where the court say,—"The doctrine of waiver of a forfeiture by the legislature by subsequent legislative acts does not apply, if, by the terms of the charter, the franchise absolutely determines on failure to perform the condition; for in such case the corporation has ceased to exist, and the doctrine of waiver does not apply."

The distinction between the defence, that a corporation has never been organized and has never existed, and the position that the corporation has forfeited its charter, is radical and wide. A defendant may say that a charter never existed, and may not say that it has been forfeited.

"To give the corporation organic life, the mode pointed out in the charter must ordinarily be strictly pursued. Conditions precedent must be fairly performed." 1 Redf. on R. R., ch. 4, "Organization of company," and ch. 9, sec. 5, "Conditions precedent to making calls." We cite by sections, as the whole matter of the text and the cases cited are in point, and embrace and express the law applicable to this case. The cases, *Oldtown & Lincoln R. R.* v. *Veazie*, 39 Me. 571, and *P. & K. R. R.* v. *Dunn*, 587, bear upon the case at bar. But *Unity Insurance Co.* v. *Cram*, 43 N. H., cited above, is conclusive for the defendant, that the notice required by the plaintiffs' charter not having been given, the plaintiffs, in the language of that case, are "not a corporation entitled to sue this defendant or anybody else."

*School District* v. *Aldrich*, 13 N. H. 144, is directly in point, that the objection that the corporation has never existed is a matter in bar,

and that there is a distinction to be noticed between such non-existence and a liability to forfeit a grant; nor is a party estopped from setting up the non-performance of a condition precedent, even though he has paid an assessment as a stockholder.  *Som. & Ken. R. R.* v. *Cushing*, 45 Me. 524.

The decision of the first point in the case is of importance to the plaintiffs, but the defendant can safely rest on *Contoocook Valley R. R.* v. *Barker*, 32 N. H. 371, and cases cited, and to which we again call the attention of the court, as calculated to release them from all further labor in case at bar; and a still stronger case is *N. H. C. R. R.* v. *Johnson*, 30 N. H. 405.  In that case, too, the defendant actually attended the meeting, when it was voted to go on and construct the road.  This case finds that there was no evidence that the defendant ever attended any meeting, and that he never did attend any meeting when anything was done having a bearing on this case.  There was no evidence that he knew that all the stock had not been taken up. Where has there been any estoppel, then?  It was for the plaintiffs to show it, if any existed.  The fact that the directors went on with the business for which the company was chartered must have led the defendant to infer (if he knew what the directors were doing) that all the stock had been taken up.  He had the right to suppose that the directors had done what honest men should do in such matters,—complied with the law,—and had not by their culpable neglect rendered each stockholder personally liable to an indefinite and uncertain amount, thus defeating one if not the principal inducement in procuring an act of incorporation—to limit the risk of the partners, and render definite the extent of their hazard.  A. & A. on Corp., 3d ed., 36.

The ruling as to the plaintiffs' right of challenge operated to give the plaintiffs three chances to challenge.  After having waived their right to a second challenge, the court had no right to allow the plaintiffs to exercise an election a third time.

Nor are we able to see in what way the jury could infer that a party in the bar who whispered to the counsel is a party to the suit.  His Honor saw that person, but how can he state that the jury noticed anything of the kind?  Did His Honor know that person to be the defendant?  Some one may have so stated to him, but hearsay and outside talk are not the material for juries to render verdicts on or to draw inferences from.

The cases in 12 Allen 362 and in 98 Mass. 100 are not in point; for sec. 2, ch. 68, Gen. Stats. of Mass., does not provide that a corporation neglecting to organize in two years shall be taken to be wholly void. Under the Massachusetts statute, such neglect simply creates a liability to forfeit the charter if the state elect to press the forfeiture.  98 Mass. 101 admits that the state could enforce the forfeiture, *i. e.*, that the organization is illegal; and had the statutes of that state provided that unless duly organized within three years the charter should be void, the corporation would have ceased to exist, would have been void,— not liable to forfeiture merely.

As the defendant understands the law, at the time he made his contract to take stock, sec. 11, p. 272, ch. 141, Rev. Stats., was in force. This section is especially made applicable to the plaintiffs—first, by their charter; secondly, by sec. 1, ch. 141 of Rev. Stats. Sec. 11, cited above, provides that the plaintiffs may from time to time, at any legal meeting called for that purpose, assess upon each share such sum of money as the company shall think proper, not exceeding in the whole the amount at which each share shall have been originally limited."

Under this section the meeting at which the assessment is made must be a legal one. The notice must state that an assessment is to be made, and specify the debt to be paid. The assessment cannot exceed the par value of the share, and the terms " from time to time" " at any legal meeting " contemplate and comprehend all the meetings that are ever to be called for the purpose of making an assessment. It is a universal rule, applicable to any assessment to be made, be the object of the assessment what it may. Where else do you find any other provision as to the manner of making an assessment? This, we submit, is the construction to be given to this section, taken alone, and if it was in force at the time the defendant took his stock, then it is an essential component part of his contract. We desire again to call the attention of the court to the fact that, by its charter and by the statutes, the plaintiffs are made subject to all laws in force at the time of their charter; and to this fact, that sec. 11, cited above, has never been repealed, but is found as part of our statute law ever since its enactment. It has never been repealed expressly, and if any subsequent enactment may seem to conflict with it, it will not be construed as repealed if they may possibly co-exist. The object of sec. 11, cited above, was clearly to fix and limit the extent of a stockholder's liability to assessment by the corporation. It is a positive limitation upon the corporation, not upon a creditor's right to pursue a stockholder— a point of importance on the question of construction ; for the question is, What can the corporation do? not, What can a creditor do as against a stockholder? Perhaps it is better to say that sec. 11 is a limited grant of a right to assess, for it is not a limitation upon a power existing at common law, for no such right existed at common law. It is a grant of the very right itself,—the source and fountain of the right itself,—and the exercise of the power must be confined within the terms of the grant. Now, does it not follow, not as a sharp but rather as a broad principle of law, that the defendant stands exactly as he would had the plaintiffs' charter contained the provisions found in sec. 11, cited above ? Is the court prepared to hold that, in spite of the express provision of the plaintiffs' charter and the then and present existing statute that the plaintiffs' should be subject to sec. 11, cited above, still, as the defendant's defence rests on legal grounds alone, every effort shall be made to sustain the verdict ? It is only when no great public evil will be occasioned that this course is to find countenance. The provisions of the statute operate as limitations upon the plaintiffs as much as the charter itself.

As is said in 38 N. H. 126, " no assessment can be made upon the stockholder beyond what the charter provides for, or the law applicable to the subject authorizes; and all assessments assumed to be made which do not come within such authority are invalid." If, now, sec. 11 operates as a limitation upon the plaintiffs' right to assess the defendant, the plaintiffs' assessment is invalid. The consideration, that sec. 11 simply limits a stockholder's liability—the very object of a corporation—and that it is also found in every revision of the statute law since its enactment, leads to the legal conclusion that it is and ever has been in force since its passage. We do not understand that it is contended that the provisions of sec. 11 are not in force, but, with the defendant, the point is, that being in force they limit the plaintiffs' right of assessment to the same extent as if it had been in identical words incorporated into the plaintiffs' charter; and in the case at bar the defendant submits it must be considered as being so incorporated.

" All corporations established within this state on or after July 6, A. D. 1837, for the purpose of carrying on any kind of manufacture, and the officers and stockholders of every such corporation, may exercise the powers, shall be governed by the provisions, and be subject to the liabilities in this chapter contained." Rev. Stats., sec. 1, ch. 141. The plaintiffs are a corporation, if anything. It was incorporated after this act was passed. It exists for manufacturing purposes, and lacks no element to bring it within the terms of this act. If it does, what is lacking? Can the plaintiffs say? Sec. 11, cited above, is part of ch. 141, cited above. It has never been expressly repealed. It is found in the Comp. Statutes. It is found in the Gen. Statutes. Do the provisions of that section form part of the body of our statute law or not? If it is not repealed, then the assessment in the case at bar is void.

*R. R.* v. *Copp*, 38 N. H. 124, in the phrase quoted above, " or the law applicable to the subject authorizes," seems to imply that the court well understood that there was some general statute law limiting the corporation's right to assess a stockholder even to pay debts.

If any law has ever been enacted, allowing an assessment by the corporation beyond the limits prescribed in sec. 11, cited above, it repeals that section, and we should expect, upon subsequent revisions and codifications of the law, to find sec. 11 omitted. But such has not been the case. The only statute that has been suggested as giving the corporation a right to assess beyond the limits set forth in sec. 11, cited above, is sec. 3, ch. 146, Rev. Stats. This section was enacted in 1842, as we understand, as also was sec. 11, cited above, and both being adopted as part and parcel of a general law, *i. e.*, as part of the Revised Statutes, such construction must be given to each section as will not operate to nullify the force of the other. How vital, then, to distinguish the objects between the two sections ! Section 11 is not only a limitation upon the corporation's right to assess a stockholder, but is the grant itself, and, if given the full force its terms will admit, does not prevent a suit against or in any way restrict the creditors' claim

and remedy against the individual stockholder or company. Sec. 11 may stand without abridging or repealing sec. 3. The law says in such case, let it stand. 42 N. H. 73. Sec. 3 may also stand as law, and receive a construction coextensive with its object and terms, which is to allow the corporation to raise means to pay its debts by an assessment, if, as is said in *R. R.* v. *Copp*, it can be done " according to the provisions of its charter, and within its limitations," " or otherwise " by a sale of its property. If this construction be given, the two sections may well coexist, and no violent or forced construction is given to sec. 3. It will be exactly the construction the section received in *R. R.* v. *Copp*, which we say directly adjudicates this point, that sec. 3 does not give new power to assess, but enacts that under stated conditions the powers given by sec. 11, if they be not already exhausted, shall be exercised. And beyond all, this construction of sec. 3 will not conflict with the provisions of sec. 11, and these two considerations should and do determine this case. If it be suggested that, in 1842, by enacting the general law contained in sec. 1, ch. 146, Rev. Stats., an intent is manifested to make the stockholders responsible for all debts of the corporation, yet, as at common law, he was not so liable, this statute, in derogation of the common law right, imposing a new liability, must be construed strictly. 43 N. H. 68, 73. This being so, what are the provisions of sec. 1, cited above?—that the stockholders shall be liable as " unincorporated copartners." It does not provide, however, that the corporation or one or more stockholders shall assess any one, and we are not aware that copartners ever have the right to make an assessment. It is a grant to the creditor as against the individual, but not a power granted to the corporation to assess, or anything else. Sec. 2 gives the creditor the right to sue one or any number of the stockholders. Sec. 5 gives the paying stockholder a right to force contribution, but not to make an assessment. If it be said that the charter makes the defendant subject to all subsequent legislation, it does not aid the plaintiffs, since sec. 3, as contained in the General Statutes, was law when the assessment was made, and was adopted as part of the General Statutes, together with the construction that had been given to it by the court in *R. R.* v. *Copp*. Let this point be well considered. Sec. 3 had received a construction by the court before the General Statutes were adopted;—see 1 N. H. 9; 29 N. H. 420; 46 N. H. 125; 33 N. H. 239, 246. The defendant says there was no attempt to increase the liability of a stockholder to an assessment by the corporation, but that the stockholder was made liable to the creditor by the legislation of 1842 contained in ch. 146. Sec. 3 is penal, and for that reason is to be construed strictly—3 N. H. 94; 35 N. H. 32, 36. Is an officer to forfeit the sum of $1,000 for not assessing a stockholder who has already been assessed to the limits of sec. 11? Both sec. 11 and sec. 3 are to be taken together—12 N. H. 284; 28 N. H. 71; 37 N. H. 248, 304. And if the fact that the political party then in power in this state was hostile to all corporations be assigned as a reason why the legislation of 1842 was intended to limit

the power of corporations, and was intended to make the stockholder responsible for all debts, that hostility was directed towards the corporate body, as such, and not against the individual, and hence that legislation was not intended to increase the power of the corporation by extending a limited right of assessment to an unlimited and indefinite extent. If there be anything in the suggestion, it leads to the conclusion that it was not intended to increase the corporate power either as against creditor or stockholder. There is, we respectfully suggest, something singular, at least, in the idea that, actuated by jealousy and opposition to corporations and corporate power, the legislature of 1842 in fact increased that power by giving an indefinite power to raise money by assessment, defeating the very object it had in view, and in a manner too plain to have passed unnoticed had it been understood that such was the intent of the act. Be that as it may, by the act of July 8, 1846, p. 300, ch. 321, sec. 1, ch. 146, Rev. Stats., sec. 1, was expressly repealed, and the whole policy of the law relating to the individual liability of stockholders underwent a radical change, and they are exonerated from all personal liability, except in certain cases stated, so that so far from its being the policy of the law to charge the stockholder individually for corporate debts, in fact the policy of the law was the other way, both when the plaintiffs were chartered in 1866, and when the assessment was made in 1868; and the defendant says that the retention in the General Statutes of the provisions of ch. 146, sec. 3, was a retention made, not in derogation of, but in subordination to, the then existing policy of the law not to charge the stockholder individually. It was a retention made after, and adopting the construction which sec. 3, ch. 146, had long before received in *R. R. v. Copp*, by EASTMAN, J., who, as a member of the then dominant faction, well knew the intent of the law. The General Statutes adopt and reënact ch. 146, sec. 3, and its previous constructions. 46 N. H. 125, cited above. There is no change of language in the General Statutes to indicate a clear " intention to change the law." 41 N. H. 63. The General Statutes constitutes a general revision of the law, and, under the plaintiffs' charter, governs the matter of assessment. Yet, so far as it adopts or reënacts an old statute, it adopts the construction which that statute had received. As it adopted the provisions of ch. 141, sec. 11, and ch. 146, sec. 3, it was with the intent that they should be so construed as not to conflict, as had already been done in *R. R. v. Copp.*

*Wheeler* and *Quarles* (with whom was *Whipple*), for the plaintiffs.

The first point in this case, to wit, the peremptory challenge by the plaintiffs, seems to have been wisely waived by the defendant in his brief, and calls for no words from us. Our position is, that no notice of the first meeting was necessary, except to the grantees named in the charter, and that they might get together at any time with or without previous notice, accept the charter, and do all things consistent therewith. Nay, more: that if any number of the grantees should get

together and organize, etc., without the knowledge or assent of the others, their action would be valid as against all the world, except a grantee named in the charter, who alone could take advantage of want of notice to him; that the validity of the organization cannot be inquired into collaterally; that the clause in the charter as to notice—"may call," etc.—is directory merely, and not mandatory. The record which may be referred to shows that all the grantees named in this charter were present at the first meeting, and not only did not object, but took part therein and in the subsequent proceedings of the corporation.

These views, as we think, are not only reasonable, but well sustained by authorities. "The grantees named in the charter are the sole members of the corporation until associates are admitted by them. They may, indeed, proceed to discharge the duties devolved upon the corporation without the admission of any associates." *Low* v. *Railroad*, 45 N. H. 379. The above "may call the first meeting" is directory merely, and is inserted to prevent a part of the grantees from proceeding to reap the benefit of the grant to the exclusion of the others. *Hughes* v. *Parker*, 20 N. H. 72. The charter of the Boston Mechanical Bakery did not define the manner of calling the first meeting nor of organizing—Mass. Laws, 1859, ch. 141; but a general law provided that the first meeting should be called by the person or a majority of the persons named in the charter. Its language is in form mandatory: it reads "shall be called by a notice signed by the person or a majority of the persons named therein," etc. Gen. Laws of Mass., ch. 68, sec. 3. Under these provisions the identical question under discussion arose and was settled in *Newcomb* v. *Reed*, 12 Allen 364. There the court say "that the law is directory merely, and only designed to secure the rights conferred by the charter to those to whom it was granted among themselves: thus, if all the persons interested should come together without any notice or call whatever, and proceed to accept the charter and do other acts necessary to constitute the corporation, their action would be valid. They have accepted the charter (at least all who desired to do so), organized under it, issued stock, elected officers who have acted and served in that capacity, carried on business, contracted debts, and exercised all the functions of corporate existence. It is therefore too late to deny that the corporation ever had any legal existence."

This question is again decided in *Walworth* v. *Brackett*, 98 Mass. 100. In this case only one of the corporators signed the notice of the first meeting, the others not consenting, yet held valid. The court there say,—"As against all persons but the commonwealth, therefore, and the two persons named as corporators who refused to join, if they had chosen to assert an adverse right, the organization seems to be valid." *Ib.* 101. By taking the stock the defendant is estopped to deny the legal existence of the corporation; for "a person entering into a contract with a corporation by its corporate name is estopped to deny that it is duly constituted. *Low* v. *Railroad*, 45 N. H. 378; *Richmond* v.

*Willis*, 13 Gray 182.   By taking the stock the defendant was charged with a knowledge of what the records contain, and they show the irregularity of the first meeting; hence he is estopped from taking advantage of it.   34 N. H. 136.   But the question whether a corporation is duly constituted cannot be inquired into collaterally, after a charter and a corporation *de facto* are shown.   No one can take advantage of irregularities, of misfeasance and nonfeasance of the grant, but the state; and irregularities are voidable only and not void.   *Hughes* v. *Parker*, 20 N. H. 72.

The authorities on this point are too numerous to cite, as will be seen by reference to Morrison's Digest, title, Corporations.

The sale of shares is only a cumulative remedy.   *White Mts. R. R.* v. *Eastman*, 34 N. H. 147.   It is true, may is to be construed must or shall, and *vice versa*, as the intent of the statute requires; but it seems clear that there was no intention of taking away the common-law remedy.   The right of sale is given, to be used or not at the option of the plaintiffs—39 N. H. 496; 39 N. H. 437; Angell & Ames on Corporations, 7th ed., 515–549.   "That the capital stock was never duly fixed and limited," etc.   Brief statement of the defendant.

It was voted unanimously, all the grantees being present, to accept the charter, etc.; that the capital stock be fixed and limited at eight thousand dollars.   And the charter provides that the capital stock shall be divided into shares of one hundred dollars each.   It is true, no separate vote was taken that the number of shares should be eighty of $100 each; but by the said vote, the number and amount of the shares were as effectually fixed and limited as words could do it: more would have been idle verbosity.   But supposing it was not duly fixed and limited: what of it?   Then he owned 1-76 of the whole stock, no matter what it was, whether fixed and limited or not,—for the corporation was in condition to contract debts, and was liable for them.   A corporation exists so as to be liable to contract debts as soon as its first meeting is held and its officers chosen, and until a division they hold the whole capital in common, and are immediately liable for its debts.   *Hawes* v. *Anglo-Saxon Petroleum Co.*, 101 Mass. 385.

The authorities cited by the defendant to sustain his position,—that this assessment could not be legally made, because only seventy-six shares had been taken, when a by-law fixed and limited the number at eighty,—have reference only to assessments to enforce a subscription for stock, and have nothing to do with a case of this character: those cases only decide whether under a given state of facts a man is or is not a stockholder.   Here the defendant has taken the stock of his own volition and paid for it, and become a stockholder and received a certificate of stock, which shows that his share was numbered forty-nine.   The records which may be referred to show these facts; hence he is estopped to complain that there are only seventy-six shares, when he embarked in the corporation with only forty-nine, and he must abide the consequences.   *N. H. Central R. R.* v. *Johnson*, 30 N. H. 407, and authorities there cited.   Gen. Stats., ch. 135, sec. 8, contemplates a

case of this character, and fixes the liability of the stockholders; and ch. 136, sec. 4, points out the way in which they may discharge liabilities so incurred, otherwise the stockholders of this corporation must await eighty or more bills in equity with attendant costs, and other vexatious litigation. The General Statutes contain substantially all the provisions, of the Revised Statutes and Compiled Statutes. Sec. 15 of ch. 134, Gen. Stats., provides only for the payment of the capital stock, and has no reference to what may be done after the corporation has embarked, and finds itself under liabilities which it has not property or means to discharge. Sec. 4, ch. 136, has never received a judicial construction; and the question is, whether that section authorizes a corporation to make assessments to pay incurred liabilities. All of the authorities relate to assessments made under sec. 15, ch. 134. In *Great Falls & Conway R. R.* v. *Copp*, 38 N. H. 124, this question was not in issue, and what is there reported cannot be regarded as authority upon this point. In that case there was an express limitation in the charter beyond which assessments could not be made, and that was the point decided in that case. This chapter provides, in section 1, what shall be the remedy against a stockholder in section 2,—that there shall first be a legal demand upon the corporation, and that no proceedings shall be had until after sixty days from the demand; section 3, the duty of the corporation upon demand being made, etc.; in section 4, in case the debt is not paid or secured, that the officers of the corporation shall forthwith call a meeting of the stockholders to provide means for its payment, by assessment or otherwise, within sixty days from date of demand, and a heavy penalty against the officers if they do not call such meeting. Now we submit that these provisions, so in accord the one with the other, must have some significance and some meaning. There must be in it an authority for the stockholders to assess themselves, and thus be relieved from their liabilities and the embarrassments of the litigation which must otherwise ensue if the creditor enforces his claim. In *Andover & Medford Turnpike Corporation* v. *Gould*, 6 Mass. 43, it is said that the statute, which provided that "whenever any proprietor shall neglect or refuse to pay a tax or assessment agreed on by the corporation to their treasurer in sixty days after time set for payment," gave power to the corporation to make an assessment. This is the policy of the law, and should be of the legislature, to discourage litigation, and encourage, by giving the power to do it, satisfaction of all just liabilities without the aid of courts and the power of process. The law makes the creditor wait sixty days before suit, and gives the same time to the corporation to satisfy the demand.

How is the corporation to satisfy the demand? The law says, by assessment upon themselves or otherwise;—in other words, in such way as the stockholders at a meeting so-called may determine,—and gives them the power to do it as they may adjudge is for their interest. It is said that the assessment here contemplated is only in cases where the capital stock has not all been paid in; but such, we submit, is too

narrow and limited a construction.    The statute has in terms no limitation whatever ; and as this section is in the chapter providing for payment of the debts of corporations, it would seem to be in contemplation that the full amount of the capital stock had been paid in.

In case of insolvent corporations, where the capital stock has all been paid in, what other means can the corporation adopt to pay its debts, or the stockholders to relieve themselves from suits against them by the corporation's creditors, but by assessing themselves, and thus raising the means to discharge their liabilities?    In such cases, what could be the advantage of calling a meeting of the stockholders, if they have no power to make assessments ?—and yet, this section regards a meeting of the stockholders of so much importance that it provides a fixed penalty of one thousand dollars against any officer who shall neglect or refuse to call such a meeting.    This is an assessment which the directors cannot make, as they may where the capital stock is not paid in, but it is an assessment to be made by the stockholders.    The law contemplates a meeting of the stockholders to consider the emergency and exigencies of the case, and intends to give the stockholders the power to relieve themselves, and nothing short of the power of assessing themselves could be effectual.    But it is said, these views being correct, no action can be maintained until after a sale of the shares, as provided in sec. 15, ch. 134, Gen. Stats, and then only for the balance of the assessment, after deducting what the shares may sell for.    But that provision relating to the shares has no application to assessments made under the section now under consideration, but applies only to assessments made under sec. 15, ch. 134.    The section providing for the sale of the shares immediately follows the section providing for assessments, and its language is " sum so assessed," meaning assessed as in the preceding· section.    The reason for this view is apparent, for when the capital stock is being paid in,—especially when considerable part has been paid,—the share may be presumed to have a value ; while in the case of a corporation which has become insolvent with outstanding liabilities which the corporation has no means of paying, and creditors are about to resort to individual liability of the stockholders for payment, shares could not be supposed to have any marketable value, and from a sale of them nothing could be realized, not even to pay expenses of sale.

Finally, the defendant's promises made in the letter are decisive of this case.    N. H. Central R. R. v. Johnson, 30 N. H. 407, and authorities there cited.

There was no evidence at the trial uncontradicted, that all the assets of the corporation, with what could be derived from this assessment, would not more than pay said debts, but we think the finding of the jury rendered it unnecessary that this should appear in the case; otherwise we ask to have the case amended so as to show that fact.

PER CURIAM.    I. This is an action in the name of an insolvent corporation, to collect an assessment levied for the purpose of paying their debts.    The creditors of the corporation are the parties likely to be

principally benefited by a recovery in this suit. Although the action is not prosecuted in the name of an assignee or receiver, we think the interest of the creditors is to be so far regarded, that no defence grounded on defects in the plaintiffs' organization can be maintained in this suit, unless it could have been successfully set up in answer to a creditor's bill against the stockholders to enforce their personal liability.

The defendant contends that the corporation has never had a legal existence. The charter provides that any three of the grantees "may call the first meeting of the corporation, by publishing a notice of the time and place of meeting    *    *    at least fifteen day prior thereto." Only fourteen days' notice was given of the first meeting. Ordinarily such a provision in regard to the time of notice would be regarded as merely directory, and a literal compliance with it would not be held an essential prerequisite, a condition precedent to the existence of the corporation;—see *Narragansett Bank* v. *Atlantic Silk Co.*, 3 Met. 282, pp. 288–9. The purpose of the provision was, "to secure the rights conferred by the charter to those to whom it was granted, among themselves, by providing an orderly method of organization." HOAR, J., in *Newcomb* v. *Reed*, 12 Allen 362, p. 364 ; and see *Walworth* v. *Brackett*, 98 Mass. 98. If neither the grantors of the charter (*i. e.* the state), nor any of the grantees, complained of the defect in the preliminary notice, it would seem that the objection could not be subsequently raised by this defendant who has taken stock in the corporation, thereby recognizing the corporate existence and manifesting his purpose to participate in the profits thereof. Angell & Ames on Corporations, 7th ed., secs. 83, 94, 524, 635 ; *Methodist E. U. Church* v. *Pickett*, 19 N. Y. 482 ; *Eaton* v. *Aspinwall*, 19 N. Y. 119 ; *Appleton M. F. I. Co.* v. *Jesser*, 5 Allen 446, p. 448 ; *Black River & Utica R. Co.* v. *Clarke*, 25 N. Y. 208 ; *Congregational Society* v. *Perry*, 6 N. H. 164 ; *Haynes* v. *Brown*, 36 N. H. 545, pp. 562–3.

The defendant, however, relies on sec. 35 of ch. 147, Comp. Stats., which provides that "any act of incorporation," for a dividend-paying corporation, "shall become null and taken to be wholly void at the expiration of three years from and after the passage of such act, unless the grantees or corporators in the act named,    *    *    shall have, within said time, accepted such act or charter, organized as a company under it, and entered in good faith upon the proper business of the corporation." The argument apparently is, that "organized as a company under it" means "organized in literal compliance with all the provisions of the charter, whether merely directory or otherwise." We think it means rather,—organized under color of the authority of the charter, with the *bona fide* purpose of acting under and according to the charter. The statute was not found to allow corporations, or their members, after professing to organize under the charter, and after acting under such organization, to repudiate their debts by setting up their own "neglect of duty" in a matter respecting which the public at large are not interested nor likely to be well informed. The object of the statute was rather to

limit the time within which *bona fide* action should be taken by the grantees to avail themselves of the privileges of the charter. A *de facto* organization, formed and operated in good faith, under color of the charter, is an organization under the charter, within the meaning of the statute.

The present case differs from *Unity Ins. Co.* v. *Cram*, 43 N. H. 636. The so-called " Unity Insurance Company " was an association " which had undertaken to assume corporate powers " under a general act,— ch. 152, Comp. Stats.,—a portion of which is as follows: Sec. 1. "Any persons may voluntarily associate themselves together, and have all the powers of a corporation, for either of the following purposes: * * to organize a fire engine company, or a mutual fire insurance company." " Sec. 2. Every such association shall be formed by written articles specifying the objects of the association, and the conditions on which it is formed, and subscribed by each member thereof." The articles of association were not signed by the members.* It was rightly held that the subscription of the articles was a condition precedent to the creation of a corporation or to the exercise of corporate rights. " It is the basis on which all subsequent proceedings are to rest, and is designed to take the place of a charter or act of incorporation, by which corporate rights and privileges are usually granted. If there were no such requirement, there would be an absence of any provisions by which the right to exercise corporate power could be definitely fixed and established. * * It is not a case of a defective organization under a charter or act of incorporation, * * but there is an absolute want of proof that any corporation was ever called into being, which had the power of contracting debts or of rendering persons liable therefor as stockholders." BIGELOW, J., in *Utley* v. *Union Tool Co.*, 11 Gray 139, pp. 141, 142. " We think these reasons have no application to the case now before us. In this there was an act of incorporation from the legislature. There is no question that the corporate powers which it conferred were assumed by the persons by whom it was intended that they should be enjoyed, so far as they chose to avail themselves of them. * * The evidence was ample to show that the persons named in the act of incorporation with their associates, or at least all of them who desired to do so, have accepted the act," organized under its authority, " issued stock, elected officers who have acted and served in that capacity, carried on business, contracted debts, and exercised all the functions of corporate existence. It is therefore too late " for a stockholder " to deny that the corporation ever had any legal existence * * ." HOAR, J., in *Newcomb* v. *Reed*, 12 Allen 362, p. 364; and see *Walworth* v. *Brackett*, 98 Mass. 98. In *Unity Ins. Co.* v. *Cram*, it seems to have also been held, that the giving of the notice prescribed by statute was essential to the creation of the corporation. If this part of the decision was correct, the foregoing observations seem to show its inapplicability to the present case.

---

* This appeared upon the face of the papers, and otherwise in *Marston* v. *Durgin*, *post*.
                                                                    REPORTER.

In passing, it may be remarked that *Unity Ins. Co.* v. *Cram* is open to misapprehension in one respect. The court did not pass, and were not called upon to pass, upon the question whether a stockholder or contractor is estopped to deny the existence of a corporation.* The case was submitted under an agreement of the parties, which would seem to leave the question of estoppel out of the case. When parties agree that the decision of a single point shall determine the case, the court are not called on to consider whether any other point might have been successfully raised by either side. See *Gleason* v. *Emerson*, 51 N. H. 405. *Unity Ins. Co.* v. *Cram* was submitted under an agreement, p. 640,—" That if the court shall be of opinion that the plaintiffs were a corporation, * * and as such had a right to issue a policy of insurance to the defendant, and that the assessment * * was legally made, judgment shall be rendered for the plaintiff; otherwise judgment shall be rendered for the defendant, with liberty of review to either party."

Under our decision—*Littleton Manf. Co.* v. *Parker*, 14 N. H. 543; *N. H. Central R. R.* v. *Johnson*, 30 N. H. 390; *Contoocook Valley R. R.* v. *Barker*, 32 N. H. 363—the defendant could not have been compelled to pay his original subscription and accept the stock, until the whole entire eighty shares were subscribed for. But it was competent for him to waive his right of refusal; and he did so by paying for and accepting the stock. He cannot raise now an objection, which, for aught that appears, might equally well have been taken then. In the absence of contrary evidence, it must be presumed that he would upon making reasonable inquiry have then ascertained the number of shares subscribed for.

II. The ruling as to the challenge was not open to exception—*State* v. *Pike*, 49 N. H. 399, p. 406—and was correct. *McAllister* v. *Stewartstown Bridge Co.*, Coös, 1872, not reported.

III. The testimony of Quarles was properly admitted. To constitute a demand, it must ordinarily appear that what was said or done was intended as a demand by the one party, and was or ought to have been so understood by the other party. " A demand may be made without words written or spoken. It is enough if both parties understand that a demand is made." *Norris* v. *Morrill*, 40 N. H. 395, p. 401. The testimony of Quarles tends to show the understanding of the party (*i. e.*, the corporation) on whom the demand was alleged to have been made. It is no objection to the evidence that it is only one link in a chain of proof. See *Delano* v. *Goodwin*, 48 N. H. 203, 206.

IV. The ruling, that the defendant's letter was evidence competent to be submitted to the jury to show an admission of the defendant that payment of all the debts named in the assessment had been demanded, was correct.

V. The objection, that some of the debts were not binding on the

---

* In *Marston* v. *Durgin, post*, this question appeared upon the surface of the case.
                                                              REPORTER.

corporation, comes too late.   The defendant should have insisted on it before the jury.   It seems effectually waived by the agreement, "that there were no questions of fact except the following," etc. The facts now relied on by the defendant do not appear from the case reserved.

VI. We come now to the principal question in the case, which is one of very great practical importance, viz., whether the statutes of this state entitled the corporation to assess the defendant for the payment of debts after he has paid in the full amount of his subscription to the capital stock.   " Very clearly, a corporation has not power *as incident to it* to assess for its own use a sum of money on the corporators, and compel them by action at law to the payment of it.   The power must be derived from an express promise or from statute.   *   *   Angell & Ames on Corp., 7th ed., sec. 544.

There is, in this case, no valid promise.   The promise in the defendant's letter was without consideration; there was no benefit received by the defendant, nor was there any loss or damage to the plaintiffs in consequence of the letter.   It was written after the assessment, and after the liabilities had been incurred and the corporation had ceased to do business.   There is no estoppel.   It is unlike the case where a subscriber stands by and sees a corporation begin works and incur expenditures on the faith of his subscription.   This case lacks one essential element of an estoppel, viz., change of position by the other party.

The question, then, as already intimated, turns on the construction of the statutes.   The plaintiffs' claim that the power to make this assessment was conferred by Rev. Stats., ch. 146, sec. 3,—substantially reënacted in Gen. Stats., ch. 136, sec. 4, as follows: "Upon demand of payment of any debt of a corporation being made, if the same shall not at once be paid, or unincumbered personal property sufficient to satisfy it be exposed, the officers of the corporation shall forthwith call a meeting of the stockholders to provide means for its payment, by assessments upon themselves or otherwise, within sixty days from the date of such demand; and if any officer, whose duty it may be to call such meeting, shall unreasonably neglect or refuse to call the same, he shall forfeit one thousand dollars, to be recovered in an action of debt by any person injured."

If the clause " by assessments upon themselves or otherwise" had made its appearance in the General Statutes as a new provision, without having been previously incorporated into our legislation, one of the defendant's arguments would be entitled to great and perhaps decisive weight.   Under the General Statutes, stockholders are made personally liable to creditors for corporate debts only in limited and exceptional instances.   Sec. 4, ch. 136, Gen. Stats., makes no distinction, in terms, between cases where stockholders are personally liable to the creditors, and cases where they are not so liable.   But the clause in question was not new.   It first appeared in the Rev. Stats. of 1842, ch. 146, sec. 3, as a part of a body of laws under which stockholders,

instead of a liability only in exceptional instances, were made personally liable generally for all corporate debts*. By ch. 146, sec. 1, Rev. Stats., stockholders in corporations are made personally liable to pay the debts and civil liabilities of the corporation in the same manner and to the same extent as though the stock were owned and the business transacted by the stockholders as unincorporated copartners.

Section 2 provides that proper actions of debt, or assumpsit for the collection of *such* debts or liabilities, may be commenced and prosecuted against any one or more of said stockholders.

Section 3 provides that no suit against any stockholder for the collection of any *such* debt shall be commenced until after a legal demand of payment thereof shall have been made upon the company. Upon such demand being made, if officers or stockholders shall discharge *such* debt or liability, or expose unincumbered personal property of such company, liable to attachment, sufficient to satisfy *such* debt or liability and costs, so that the same may be attached in a suit against such company for the security of *such* debt or liability, then no suit shall be sustained thereon against the stockholders.

Whenever the officers or stockholders after demand shall not satisfy *such* debt or expose property to be attached, it is made the duty of the officers forthwith to call a meeting of the stockholders, and the company when met shall provide means for the payment of such debt or liability, either by assessments upon the stockholders or otherwise, within sixty days from the time when such demand was made.

And if *such* debt or liability shall not be discharged within sixty days, a suit may be sustained against the stockholders, as provided in sec. 2.

If the officers whose duty it may be to call such meeting shall unreasonably neglect to call the same, they shall severally forfeit the sum of $1,000, to be recovered in an action of debt by any person injured thereby.

In 1846, sec. 1 of ch. 146, Rev. Stats., was repealed by ch. 321, P. L., in terms.

The repeal of sec. 1 would leave secs. 2 and 3 practically inoperative. Did the repeal of these two sections follow as incident to the repeal of sec. 1 ? This might be so, if there had been no further legislation in regard to the personal liability of individual stockholders.

The same legislature (of 1846), in the act (ch. 321, P. L.) in which they repealed sec. 1 of ch. 146, Rev. Stats., which imposed an unlimited personal liability on individual stockholders, made stockholders individually liable to a limited extent under the provisions of sec. 2 of the act of 1846.

Among other cases where stockholders were made individually liable under the act of 1846, was the provision that they should be so liable until the whole amount of the capital fixed and limited by the corpora-

* The preceding portion of this opinion was prepared by Mr. Justice JEREMIAH SMITH before he retired from the bench, and the remainder by Mr. Justice ISAAC W. SMITH.                                                              REPORTER.

tion shall have been paid in, and a certificate thereof shall have been made and recorded by the clerk of the town where such corporation has its place of business or is situated.

It is unnecessary to inquire under what other circumstances the stockholders were made individually liable. By section 4 of the act of 1846, the process and modes of proceeding against corporations, their officers and stockholders, who may become liable for their debts and civil liabilities, shall be the same as are provided by chaps. 141 and 146 of the Rev. Stats.; and the remedies of the officers and stockholders who have incurred such liabilities against such corporation, their officers and stockholders, shall be the same as are provided in said chapters in like cases.

It will thus be seen that the legislature made provision for enforcing the individual liability of stockholders, as created in the act of 1846, under secs. 2 and 3 of ch. 146 of the Rev. Stats.

Now, under what circumstances were stockholders liable to be proceeded against under secs. 2 and 3 of ch. 146 of the Rev. Stats.? Their liability under section 1 had been repealed, and it must be clear that they could only be proceeded against when liable under the act of 1846.

The provisions of the act of 1846 are substantially incorporated in ch. 135 of the Gen. Stats., while the provisions of sec. 3 of ch. 146 of the Rev. Stats. are substantially incorporated in ch. 136 of the Gen. Stats. What, then, has been the law on this subject since the revision of the statutes in 1867?

By sec. 8 of ch. 135, every stockholder, except in banks, is liable for all debts and contracts of the corporation until the whole amount of the capital fixed and limited by such corporation shall have been paid in, and a certificate thereof, under oath signed, etc., has been filed and recorded by the clerk of the city or town where such corporation has its principal place of business, and not afterward.

Chapter 136, Gen. Stats., provides, sec. 1, that a creditor may maintain a bill in chancery to enforce payment of a debt of a corporation against individual stockholders; but by sec. 2, not until sixty days after legal demand of payment. But he can only bring such bill when the stockholder is liable under ch. 135, Gen. Stats., and to that extent only. Sec. 3 provides for exposing property, that it may be attached to pay the debt of which payment is demanded. Sec. 4 provides for calling a meeting of the stockholders, who may provide means of payment *by assessments*, or otherwise, within sixty days from the date of the demand.

What debt can they thus assess themselves to pay? Clearly, only those of which payment can be legally demanded under sec. 2; that is, such debts as the stockholders are individually liable for under ch. 135. They cannot go beyond this, because then stockholders would be individually liable beyond the limit established by statute; and we have no doubt the legislature intended to give to the stockholders the power to assess themselves to this extent in order to have a prompt, decisive, and effectual remedy for the payment of their debts, and to

avoid and prevent a multiplicity of suits by creditors, with the necessary costs and delay.   What other means can an insolvent corporation adopt to pay its debts, or the stockholders to relieve themselves from suits ?   The legislature intended to give such power to the corporation to make stockholders liable to pay, in the form of an assessment, debts which the creditors could have collected by a direct suit against the stockholders ; and there are strong reasons of convenience and expediency in giving them power to assess themselves to pay this liability.

As the case finds that the capital stock of this corporation was fixed and limited at $8,000, and that only $7,600 of the same has ever been paid in, the stockholders are individually liable under sec. 8 of ch. 135 of the Gen. Stats. ; and the assessment having been legally voted, the defendant is liable.

But it is further suggested that the only remedy, or at least the primary remedy, for the collection of the assessment is a sale of the shares. This might in the absence of a promise be true, so far as regards assessments made under sec. 11, ch. 141, Rev. Stats., to collect the sum subscribed for the original capital stock—see *N. H. Central R. R.* v. *Johnson,* 30 N. H. 390, p. 403, and sec. 12, ch. 141, Rev. Stats. ; but this cannot ordinarily be an effectual remedy for the collection of assessments to pay debts after a failure to expose unincumbered attachable personal property.   It is presumable that the shares would generally be unsalable under such circumstances.   We think that the legislature, in authorizing assessments in such cases, must be taken to have authorized the use of prompt and effectual means to collect the same—Broom's Maxims 471 ; and that assumpsit is maintainable against a delinquent stockholder.   The law often allows that action to be maintained " for the sake of the remedy " where there is no promise in fact, and even in the face of a party's refusal to perform his duty.   *Sceva* v. *True,* 53 N. H. 627.   In our view, sec. 16 of ch. 134, Gen. Stats., relates only to the collection of such assessments as have been levied under the authority of sec. 15, ch. 134.   In *Franklin Glass Co.* v. *White,* 14 Mass. 286, cited by the defendant, the same statute that conferred power to make the assessment, provided a remedy by sale of the shares, which the court held exclusive.   But here, the statute conferring the power to make the assessment provides no remedy by sale.   That remedy is given in another statute as a means of collecting the assessments authorized in that other statute, not this class of assessments.

According to these views there must be

*Judgment on the verdict.*

*Hobbs,* for the defendant, having applied to the judge who tried the cause to amend the case by adding the following,—" the debts and liabilities for which the assessment was made exceeded in amount the property and assets of said corporation and all its capital stock paid in or limited,"—asked for a rehearing upon the point that such debts, as to the stockholder, are *ultra vires.*   The case was thereupon continued for further argument and consideration upon this point.

*Hobbs* (with whom were *Allen* and *L. D. Sawyer*), for the defendant.

The amount of debt exceeds one half of the capital stock paid in, with all the corporate property.   This debt was contracted by the corporation, when it is expressly prohibited from so doing by secs. 4 and 5, Gen. Stats., and the act of 1846.   While the officers who violate secs. 4 and 5 are made liable for contracting such debts, it seems impossible that they can have any right to assess a stockholder to pay such illegally contracted debts.   Is not such a debt, as against a stockholder, *ultra vires,*—at least, as between him and the corporation or directors ? Both of the latter are prohibited from contracting such a debt.   Have they authority to contract it ?   If so, where do they get it ?   If not, how can they call on the defendant to pay any part ?   To hold otherwise is to imperil the fortunes of every one who has a share of stock in a New Hampshire corporation.   *Rich* v. *Errol,* 51 N. H.   It certainly would be a singular construction which should hold that a legislature that adopted the restrictions of the act of 1846 (an act expressly repealing the antecedent copartnership liability provision of the Revised Statutes), in passing the General Statutes, did not intend that those limitations should have any force ; or which should hold that the legislature of 1868, in adopting the provision of sec. 3, ch. 146, Rev. Stats., adopted it with reference to sec. 1, that had long before been repealed by the act of 1846, ch. 321, rather than in reference to the act of 1846 itself, which was the existing law in 1868 when the General Statutes were adopted.   The scope of the act of 1846 is to limit the risk of the stockholder, and render its extent certain even as against the creditor; and while democratic jealousy toward corporations gave the creditor enlarged rights, by chapter 146 cited above, it restricted the corporation's power as to all parties, and in a few years relaxed its policy between creditors and stockholders, and by the act of 1846 limited and defined the cases in which he can be held; and the whole argument from the intent of the legislations is, that, as to the powers of the corporation, the legislation was restrictive, from early dates to this time, as to every one ; and hence we find, in the act of 1846, the prohibition as to creating debts beyond half the capital stock paid in, etc.   The other general position is, that, as between the creditor and the stockholder, the legislature favored the creditor up to the act of 1846, when the current was changed.   And it is somewhat remarkable to see how clearly the legislature have always marked the distinction between the right of a creditor to sue a stockholder to collect his debts, and the right of the corporation to assess the stockholder for the purpose of paying those debts.

We entertain grave doubts as to the power of a creditor to collect of the stockholder debts contracted beyond one half of the capital stock, etc.   The debt is *ultra vires,* and perhaps, under *Rich* v. *Errol,* as the corporation has power to contract for some purpose, a creditor would not be estopped unless it appeared that he knew that the limit

established by the statute had been exceeded. But when the question comes, Can the corporation or directors assess to pay such a debt, even if the par value has not been paid in ? a different conclusion must be reached ; for the right to assess to pay debts means legal debts, etc., such debts as the corporation had the right to contract with a view of having them paid by stockholders, but not such debts as both the " corporation and directors" are forbade to incur under a heavy penalty. To hold otherwise is to negate the whole protection the law has attempted to give to the stockholder. The intent of this provision is benign and wise. It is intended that, as soon as the corporation has become so reduced as to owe one half its value, the directors must cease to further involve the stockholders ; and if they are deprived of all power as against the stockholders to hire money or buy on credit, an immediate stop to unprofitable and unskilful efforts will take place : and hence we find, in sec. 15, Gen. Stats. 135, and long before, that a director or officer who had violated this limitation and had been forced by a creditor to pay the debts, could not have contribution from the other stockholders. Are the court prepared to hold, nevertheless, that they can assess such other stockholders to pay such debts ? The case makes the books used as evidence part of the case, and they show that the directors were present, and authorized the contracting of these debts, and that Canney (as the case finds) had nothing to do with it, nor knew anything about the condition of the corporation.

How, then, is he estopped to say that he could not be assessed until all the shares were taken up and paid for ? He had no knowledge but what they were all taken up, and his letter meant legal assessment, as was held in 14 N. H. 548, 30 N. H. 390, and 32 N. H. 369. We have failed to find anything in the case showing bad faith on the defendant's part. Living in Massachusetts, he could not be expected to know that all the shares were not taken up, but we say, thinking they had been, he wrote the letter in the case at bar. The case at bar is a much stronger case for the defendant than the one just cited, for in this case the assessment was not made on the faith of the defendant's promise, but the assessment had been made before the letter. If the defendant understood that all the shares had been taken, and under this misapprehension wrote the letter, he is not to be holden, unless the cases cited are inapplicable or bad law ;—see, also, act of 1856, p. 1769, sec. 1, ch. 1852.

Debts were included as to which no demand was made, and many of the debts could not be assessed at all, nor be collected of the corporation or stockholder by the creditor. Under sec. 4, p. 281, Gen. Stats., the corporation could not contract debts exceeding one half its capital stock paid in, and its other property, etc. Any contract beyond that is *ultra vires*, and binds neither the corporation nor stockholder ; and the creditor, dealing with an agent of a corporation, must see for himself that the agent acts within the scope of his authority, and an act *ultra vires* cannot be ratified. The assessment is made for an amount greater than all of the plaintiffs' capital stock and other property, and certainly includes debts that the agent and directors could not, within

the scope of their authority, contract; that the corporation could not, for the statute forbids it under a heavy penalty.  Sec. 5, p. 281.  This section does not make the corporation liable, but charges the directors for a contract made in the name of the corporation.  It is idle to say that a stockholder can be assessed for a debt not binding upon the corporation.  One half of the claims in the case at bar, at least, were not legal claims of the company.  The assessment is illegal for that reason. *Rich* v. *Errol*, 51 N. H., is decisive on this point.  The plaintiffs should have voted to sell all the corporate property under the term " or otherwise " to pay its legal liabilities.  It could not do that to pay debts contracted *ultra vires*, and, as the defendant claims in his fourth ground of nonsuit, having paid the par value of his share, he cannot be assessed to pay debts, especially when they are not debts the corporation are bound to pay.  If section 4 gives any right of assessment, it is perfectly clear that that right is not restricted to those cases where the stockholder is individually liable, but applies as well to those cases where he is not personally liable.  A consideration of this fact sufficiently demonstrates the utter absurdity of the plaintiffs' theory.

*Bank* v. *Globe Works*, 101 Mass. 57, is not in point for the plaintiffs. In the case at bar, the suit is not against a corporation by a *creditor*, but is by a corporation to collect an assessment to pay debts the corporation had *no right* to contract.  This is one radical ground of distinction.  The second is, that some of the debts included in the assessment were incurred after the auditor's report in 1869, when the corporation owed some $9,000, as the books show and the report states, and a part of this last amount is debts due to John Chick, treasurer and president of the company and a director, and to Levi Smith, a director, and to Pepper, and sundry stockholders.  These parties, being officers of the corporation, are *charged* with knowledge of the matter of *ultra vires* at the time they in their capacity of directors allowed the corporation to become their debtor—101 Mass. 58, near bottom of page ; but in this state the restriction on the corporation in regard to incurring debts is a public penal statute, and every one is charged with knowledge of it.   Can a corporation make an assessment to pay a debt which both the corporation and directors are prohibited from contracting ?

*Quarles*, *Wheeler*, and *Whipple*, for the plaintiffs.

Isaac W. Smith, J.  The questions raised in this case, as it was originally drawn, were decided by us at the adjourned term in March last.

By an amendment to the case, although the fact does not distinctly appear, it may be assumed that the debts and liabilities for which the assessment was made exceeded in amount the property and assets of the company, and one half of its capital stock paid in and limited. The defendant contends that for this reason the assessment was illegal, and that this action cannot be maintained.

Chapter 135, sec 4, of the General Statutes, provides that " No corporation, banks and insurance companies excepted, shall contract debts or incur liabilities exceeding one half of its capital stock then actually paid in and unimpaired, and of its other property and assets."

Section 5 of the same chapter provides that if any corporation, by vote or by its officers, shall violate the provisions of section 4, the directors shall be individually liable to the amount of the excess of debts and liabilities above half the capital stock paid in and of the other property and assets, for all the debts and contracts of the corporation then existing, or contracted while they respectively remain in office.

It is claimed by the defendant that as to any debt contracted beyond the amount limited in section 4, the contract is *ultra vires*, and binds neither corporation nor stockholder; and that a creditor, dealing with an agent of a corporation, must see for himself that the agent acts within the scope of his authority ; and that an act *ultra vires* cannot be ratified.

I. Is a debt thus contracted binding upon the corporation ?

It will be observed that by these provisions of the statute, debts contracted beyond the amount limited in the fourth section are not declared illegal and void.  The penalty imposed for a violation of this provision of section 4 is, that the directors are made individually liable for all the debt and contracts of the corporation to the amount of such excess.   The language is " for all the debts and contracts *of the corporation*," not for such debts and contracts contracted in excess of the amount limited.   If they are not debts and contracts of the corporation, then there are no debts and contracts of the corporation for which the directors can be made individually liable in excess of the amount limited.

We think it is clear that the provisions of section 4 must be regarded as merely directory, although their violation may be culpable on the part of the officers, and for this conduct of the corporation the government might probably seize their franchise upon due process.

We think this view of the construction of sections 4 and 5 is confirmed by an examination of the corresponding provisions of the statute in regard to banking corporations, ch. 153, sec. 9, which is as follows : "No such bank [authorized to issue bills, sec. 2] shall have in circulation its own bills to an amount greater than the amount of the excess of its capital actually paid in above the amount of loans made to its stockholders on pledge of its own stock ; and in case of any excess, the directors, under whose administration it shall happen, shall be jointly liable, to the extent of such excess, for all debts of the corporation then existing and that shall be contracted during their continuance in office, until the circulation shall be reduced to the limit above described."

Here the penalty is, not that the excess of circulation shall be null and void, thus punishing the innocent bill-holder, but the directors are made individually liable for *all* debts of the bank to the amount of such excess of circulation, *until the circulation shall be reduced* to the

limit prescribed. Reduced how? By being redeemed, that is, paid by the bank that put the bills in circulation.

And by chapter 159 no foreign insurance company is permitted to transact any business in this state until certain requirements of the law are complied with; but by section 10 any insurance made by any such company is made valid against them, though they have not complied with the requirement of the law.

Returning to chapter 135, there is another objection to holding that debts contracted in excess of the amount prescribed are not binding, and that is, the difficulty of ascertaining with readiness and accuracy the amount of the other property and assets of the corporation. It might consist of personal property widely scattered, debts or choses in actions of a doubtful character, and of real estate and machinery liable to rapid depreciation and loss. Before any creditor could safely deal with such a corporation, it would require an inventory of the property and assets to be frequently taken, to say nothing of the fluctuations of values in the market.

But suppose the limit to which this corporation could incur debts was $10,000, and that that limit had been reached on the first day of January, 1871; and suppose, on the second day of January, 1871, it had borrowed $15,000, and given its note therefor, payable in six months, and on the third day of January, 1871, had applied $10,000 of the sum so borrowed in payment of the debts outstanding January 1st: If the debt (note) contracted on the 2d was illegal and void, can it ever become a valid debt? Can a void debt or contract ever become a valid and legal one? And if this debt became legal in any sense when the debts that stood prior to it in age were paid, did the note become a valid note to the amount of $10,000, and did it remain an invalid note to the amount of $5,000? As fast as the debts, prior in point of time, are paid, do those incurred after the limit prescribed in the fourth section had been reached slide into their places to the amount of the older debts so paid? and if so, which of a dozen or twenty invalid debts are so transposed into the list of valid debts? and if those prior in age, which of two that might happen to have been contracted at the same moment? or, if the oldest invalid claim happens to exceed in amount the place left for it to fill, will it become valid in part and remain invalid as to the rest?

For these and other reasons that might be given, we find it impossible to hold that debts contracted beyond the amount limited by law are invalid as against the corporation. There is, besides, the argument of justice in favor of holding that a corporation, equally with an individual, after having received the benefit of such contracts, shall not be permitted to repudiate them upon the ground that it has violated some statute provision in contracting them. Not only estoppels technically (so called), but estoppels *in pais*, operate both for and against a corporation. Ang. & Am. on Corp. 215.

Section 5 gives the creditor who has been thus imposed upon an additional remedy for the collection of his debt. While the corporation

remains liable for his debt, he can, if he shall choose, collect it of the directors; but it could not be the intention of the legislature to confine him to persons who might be unknown or irresponsible, or who might be skilful enough to conceal their property from legal process, and so leave him without remedy.  It is not the policy of the law to visit the penalty for violation of laws upon the innocent, and allow the guilty to escape.

It is immaterial whether these debts were contracted by a vote of the corporation or by its officers, or whether the officers were authorized to contract them.    If by the corporation, they are valid, as we have seen, without reference to the fact whether the corporation having received the benefit of them is estopped to deny their validity ; if by officers duly authorized, they are valid for the same reason ; and if the officers were unauthorized, they have been ratified by the corporation (1) by receiving and enjoying their benefit; (2) by the action of the corporation at the meeting Feb. 15, 1871, when the stockholders voted to assess themselves to pay these debts.    Subsequent ratification is equivalent to an original authority.    *Rich* v. *Errol,* 51 N. H. 350.    Ang. & Am. on Corp. 212, 216.

II.  If, as there would seem to be no doubt, these debts in excess of the limit fixed in section 4 are valid debts against the corporation, it follows of necessity that the stockholders, acting as a corporation, may assess themselves under the provisions of sec. 4 of ch. 136 to pay such debts.    The statute makes no distinction between these and any other debts of the corporation.    The language of the statute is, " upon demand of *any* debt of a corporation being made," " the officers of the corporation shall forthwith call a meeting of the stockholders to provide means for its payment by assessments upon themselves or otherwise," etc.

We decided in March last, in this case, that the stockholders can assess themselves only for such debts as can be legally demanded to be paid, under sec. 2 of ch. 136, and we think it is entirely clear that those creditors, whose debts were contracted after the limit fixed had been reached, can demand payment under that section and enforce payment under section 1.    There is no exception made of such debts in the statute, and we can perceive nothing in the statute that indicates that the legislature intended to put such creditors in any different position from the other creditors of a corporation.

There are many cases in the books where it is held that a corporation cannot enforce contracts inconsistent with the purpose of its creation, because, being created for a specific purpose, it not only can make no contract forbidden by its charter, but in general can make no contract which is not necessary, directly or indirectly, to enable it to answer that end.

Thus, where a company was chartered for the conveyance of passengers between certain places, a contract by such company for the breaking of ice and towing of vessels through the track broken to another place is invalid, and cannot be enforced against them.  *Penn., &c., Co.* v. *Dandridge,* 8 Gill & Johns. (Md.) 248.

So, where an insurance company, prohibited by its charter from doing banking business, brought a suit upon a promissory note as endorsee, which it had *discounted*, it was held that the note was void, as received by the corporation in the course of a transaction forbidden as a banking transaction by its charter. *N. Y. Firemen's Ins. Co.* v. *Ely*, 2 Cow. 678; *Utica Ins. Co.* v. *Scott*, 19 Johns. 1. But it was so held under that section of a restraining act, which declares that "all notes and securities for the payment of money, or the delivery of property made or given to any such association, institution, or company not authorized for banking purposes, shall be void."

It will be seen there is a wide difference between those cases and the case at bar. In New York the notes were declared by statute to be void. As to the debts involved in this suit, our statute does not pronounce them void, but makes the directors individually liable therefor.

And so, too, there are numerous decisions, that where contracts with corporations are illegal, although the other party can maintain no action against the corporation *on the contract*, he may recover back the consideration paid, the parties not being *in pari delictu*. *White* v. *Franklin Bank*, 22 Pick. 181; 2 Com. on Cont. 109; *Howson* v. *Hancock*, 8 T. R. 577; *Robinson* v. *Bland*, 2 Burr. 1077; *Utica Ins. Co.* v. *Scott*, 19 Johns. 1; *same* v. *Cadwell*, 3 Wend. 296; *same* v. *Bloodgood*, 4 Wend. 652; *Little* v. *O'Brien*, 9 Mass. 423; *Epis. Soc.* v. *Epis. Ch. in Dedham*, 1 Pick. 372; *Rich* v. *Errol*, 51 N. H. 361.

In *Monument National Bank* v. *Globe Works*, 101 Mass. 57, it is remarked by HOAR, J., with great clearness, that "The doctrine of *ultra vires* has been carried much further in England than the courts in this country have been disposed to extend it; but with just limitations the principle cannot be questioned, that the limitations to the authority, powers, and liability of a corporation are to be found in the act creating it; and it no doubt follows, that when powers are conferred and defined by statute, every one dealing with the corporation is presumed to know the extent of those powers. But when the transaction is not the exercise of a power not conferred on a corporation, but the abuse of a general power in a particular instance, the abuse not being known to the other contracting party, the doctrine of *ultra vires* does not apply."

In *Bissell* v. *Railroad*, 22 N. Y. 289, SELDEN, J., says,—"When the want of power is apparent upon comparing the act done with the terms of the charter, the party dealing with the corporation is presumed to have knowledge of the defect, and the defence of *ultra vires* is available against him. But such a defence would not be permitted to prevail against a party who cannot be presumed to have had any knowledge of the want of authority to make the contract. Hence, if the question of power depends not merely upon the law under which the corporation acts, but upon the existence of certain extrinsic facts resting peculiarly within the knowledge of the corporate officers, then the corporation would be estopped from denying that which by assuming to make the contract it had virtually affirmed."

Applying this doctrine as thus laid down in the courts of Massachusetts and New York, it will, of course, be apparent that the general provisions of the statutes, in regard to the power of corporations to contract debts, are to have the same force as if incorporated in the charter of this corporation.

Every one, then, dealing with this corporation must be presumed to know the limitation imposed by sec. 4 of ch. 135 of the Gen. Stats. upon its power to contract debts. But, at the same time, it is equally clear that the contracting of these debts beyond the limit fixed by statute was not the exercise of a power not conferred on the corporation, but was the abuse of a general power in these particular instances, of which abuse the other contracting parties (the creditors) cannot ordinarily be presumed to have known; nor can they be said to be put upon inquiry, because, supposing the inquiry to have been made, it would have been difficult, for reasons before given, to have ascertained the amount and value of the assets of the corporation with any certainty or definiteness. The value and amount of the assets and property of this corporation were extrinsic facts resting peculiarly within the knowledge of the corporation, and of which the creditors cannot be presumed to have had any knowledge or notice.

The books and documentary evidence used at the trial were made a part of this case, but none of them have been exhibited to us, and we only know their contents from statements made in the argument. It is represented "that some of the debts included in the assessment were incurred after the auditor's report in 1869, when the corporation owed some $9,000, as the books show and the report states, and a part of this last amount is debts due to John Chick, treasurer and president of the corporation and a director, and to Levi Smith a director, and to Pepper, and to sundry stockholders." These parties, being officers of the corporation, are charged with knowledge of the matter of *ultra vires* at the time they in their capacity of directors allowed the corporation to become their debtors.

Assuming these facts to be as stated in the defendant's brief, it does not appear whether the sum of $9,000, which the corporation owed in 1869, was equal to or exceeded the limit fixed by the fourth section, nor to what extent the corporation was indebted to Chick, Smith, and Pepper, nor whether the same or other debts were due to them February 19, 1871, nor whether the corporation was indebted to them at all at that date. If the limit fixed by section 4 for contracting debts had not been reached in 1869, when the auditor's report was made, then the debts due to Chick, Smith, and Pepper were valid debts. There is nothing in the case by which we can tell whether or not that limit had then been reached, and if reached, whether Chick's, Smith's, and Pepper's debts were contracted before or after the limit had been reached. Nothing is to be presumed in favor of fraud; and if we are to draw any inference in regard to their debts, it must be that they were properly contracted.

We have only briefly discussed the doctrine of *ultra vires* in this

case, a further examination not being necessary to its decision. There is nothing, then, in this case that shows that any of the creditors had knowledge that, at the time their respective debts against the corporation accrued, the corporation had already contracted debts or incurred liabilities exceeding one half of its capital stock then actually paid in and unimpaired, and of its other property and assets; and we are of the opinion that the debts were such debts as the stockholders could assess themselves to pay, under the provisions of chapter 136 of the General Statutes.

The exceptions must be overruled, and there must be

*Judgment on the verdict.*